# Griffin *v.* The State.

## *Indictment for Murder.*

1. *Service of copy of indictment and list of jurors, in capital case.* The service of a copy of the indictment and a list of the jurors, in a capital case (Code, § 4449), may be shown as matter of fact, although the sheriff made an irregular return, or even no return at all; and an admission of due service by the defendant, in open court, dispenses with the necessity of other proof of the fact.

2. *Competency of juror; opinion against circumstantial evidence.* A person summoned as a juror in a capital case, who states on his *voir dire*, "I have no fixed opinion against capital or penitentiary punishment, or that a conviction should not be had on circumstantial evidence, but I would not hang a man on circumstantial evidence," is not competent (Code, § 4333), and may be rejected by the court *ex mero motu.*

3. *Evidence of previous difficulty, or threats by defendant.*—On a trial under an indictment for murder, the prosecution may adduce evidence of former threats made by the defendant against the deceased, or a previous difficulty between them; the weight to be given to such evidence being dependent, more or less, on the character of the threats or difficulty, and the length of time intervening before the killing.

4. *Proof of handwriting by comparison.*—A witness who, though not an expert, is acquainted with the handwriting of a particular person, may testify whether, in his opinion, a given signature is genuine; but only experts, skilled in the matter of handwriting, may institute comparison between genuine signatures and the disputed one, and give their opinion as to its genuineness; nor can the disputed and genuine signatures be submitted to the jury, for them to determine by comparison whether the disputed one is genuine.

5. *Diagram of locality, as evidence.*—A diagram of the locality of the crime, which was used as evidence on the preliminary examination of the defendant before a justice of the peace, but was not offered in evidence on the trial, is not the subject of comment by counsel.

6. *Argument of counsel to jury.*—Objectionable remarks, made by the solicitor to the jury in his closing argument, which are "immediately excluded by the court from them, on objection by the defendant," are no ground for reversal.

7. *Verdict received in absence of defendant's counsel.*—The verdict of the jury may be received in the absence of the defendant's counsel, when he is personally present in court, especially after unavailing search for his counsel for half an hour.

8. *Application to delay trial; what is revisable.*—An application by the defendant to delay the trial until he can send for witnesses who

[Griffin v. The State.]

have not been summoned, is addressed to the discretion of the court, and its refusal is not revisable.

9. *Remarks of court in presence of jury.*—A witness for the prosecution, in a case of murder, having admitted his unfriendly feelings towards the defendant, but denied his signature to a threatening letter received by defendant while in jail, the defendant thereupon asked a delay of the trial, until he could summon experts to testify as to the genuineness of the signature; to which the court replied, in the presence of the jury: "If you were to prove that the witness wrote the letter, I *do not think it would amount to much*, in view of his admission"—that is, as to his unfriendly feelings. *Held*, that the italicized words constituted reversible error, since they might have misled the jury to the defendant's prejudice.

FROM the Criminal Court of Jefferson.

Tried before the Hon. S. E. GREENE.

The defendant in this case, Joe Griffin, was indicted for the murder of William Garrett, by shooting him with a pistol; was convicted of murder in the first degree, and sentenced to death. The homicide was committed in September, 1889. On the trial, the prosecution offered to prove by one Alex. Jackson, "that he heard the defendant make threats against the deceased about two weeks previous to said killing;" also, by Missouri Jones, "that defendant and said Garrett had a difficulty about four months previous to said killing;" also, by Sophie Jackson, "that in May, 1889, she heard defendant say he would get even with said Garrett for having him arrested;". and the court admitted each part of this testimony, against the objections and exceptions of defendant.

"In his closing argument to the jury, the solicitor used this language: 'Every day men are shot down in open day-light in our country, and other cases similar to this have occurred in open day-light in your midst.' In using these remarks, the solicitor was replying to the argument of defendant's counsel, that it was unreasonable, as claimed by some of the State's witnesses, that defendant had shot Garrett in so public a place and manner." To this language of the solicitor, it is stated, "the defendant duly excepted at the time it was used;" but no ruling of the court on it is shown. "Continuing his argument, the solicitor used this language: 'The object of the criminal law is to protect society. The law takes no special delight in punishing this man, nor in avenging the death of Garrett particularly, but to furnish an example to evil-doers, and to protect society from harm, upon the theory, that a man who would commit a murder of this kind, would murder me, or murder you, or rape our women." To these remarks the defendant then and there objected and excepted; whereupon the court immediately excluded said remarks from the jury."

Several other exceptions were reserved by the defendant,

[Griffin v. The State.]

which, with the facts on which they were founded, will be readily understood from the opinion.

WM. L. MARTIN, Attorney-General, for the State.

COLEMAN, J.—The defendant was tried for murder, convicted, and sentenced to suffer death. The trial coming on to be heard, the defendant moved the court to quash the *venire:* 1st, on the ground that a copy of the indictment had not been served upon him, as required by law; and, 2d, upon the ground that a copy of the *venire* had not been served upon him, as required by law. In support of the motion, the defendant proved by one John G. Bradley, that he wrote the return of the sheriff, and signed the sheriff's name thereto, without any special direction of the sheriff in that particular case, but under a general request of the sheriff, to write his return in cases in which a special *venire* was summoned; that Williams, the regular deputy-sheriff, brought the indictment and *venire* to witness, and at his request, and in his presence, the return was written by witness.

Section 4449 requires, that a copy of the indictment and a list of the jurors summoned for his trial be served on defendant one entire day before the day set for trial. The return of the sheriff is evidence only to show that the statute has been complied with. If he had made no return, or a defective return, at the time of the trial, or even after the conviction of the defendant, during the term, the sheriff was authorized to make or amend his return, according to the real facts.—*Kenan v. State*, 73 Ala. 16.

The deputy-sheriff, Williams, offered to testify that he, as such deputy-sheriff, did in fact serve a copy of both the indictment and *venire* upon the defendant in person, as required by law. The defendant then, in open court, admitted this to be true. It is difficult to perceive of any higher evidence of a compliance with the statute, than the voluntary acknowledgment by the defendant in open court; and this would have justified the court in denying the motion to quash, if there had been no return by the sheriff entered, showing a compliance with the statute.— *Wesley v. State*, 52 Ala. 186.

The court asked one J. A. Ledbetter, who had been drawn to serve as a juror, "If he had any fixed opinion against capital or penitentiary punishment, or that a conviction should not be had upon circumstantial evidence;" to which Ledbetter replied: "I have no fixed opinion against capital or penitentiary punishment, or that a conviction should not be had on circumstantial evidence, but I would not hang a man

[Griffin v. The State.]

on circumstantial evidence." Whereupon the court held that said Ledbetter was not a competent juror, and ordered him to stand aside for cause.

If it was necessary, in order to sustain the ruling of the court, we would presume the court "so held" upon motion of the solicitor; but the action of the court would have been free from error, if he had so held *ex mero motu.* The law secures to a defendant a fair and impartial trial, by competent and duly qualified jurors. To secure this every necessary precaution and safeguard is thrown around him. He can ask no more from the State. A juror who will not affix the death penalty, merely because the conviction is had on circumstantial evidence, is not a competent and qualified juror, contemplated by the statute. He is not competent under either section 4331 or 4333 of the Code. The power and duty of the court, of its own motion, to reject the party summoned to serve as a juror for cause, under such circumstances, was decided by this court, so long ago as 1845, in the case of the *State v. Marshall,* 8 Ala. 304; *Garrett v. State,* 76 Ala. 20.

Several exceptions were reserved to the admission of testimony, tending to prove threats of the defendant against the deceased, made previous to the date of the killing, and also a previous difficulty. The evidence was clearly admissible, the weight to be given to it dependent, more or less, on the character of the threats, and length of time intervening.—*Long v. State,* 86 Ala. 43; *Hudmon v. State,* 62 Ala. 6; *Barnes v. State,* 88 Ala. 204.

The witness Collins, having been examined by the State, on cross-examination was shown a letter, purporting to have been signed by the witness, threatening the defendant. The witness denied writing the letter, and denied that he knew the hand-writing. Witness then, in the presence of the court, wrote his signature. Defendant offered in evidence the letter and the signature, just made, so that the jury might compare the two signatures, and determine for themselves, by comparison, the genuineness of the signature to the letter. Upon objection the testimony was excluded. The defendant then offered to prove by one Embree and one Robert Warnock, who had seen witness make his signature in court, that in their opinion the two signatures were made by the same person. Both Embree and Warnock stated, that they did not know the hand-writing of the witness Collins, and that they were not experts of hand-writing. The court refused to allow them to testify. The action of the court was fully warranted by the text-books, and uniform decisions of this court. A party who is not an expert, but who is acquainted with the

hand-writing of another, may testify whether a given signature is in the proper hand-writing of the person with whose hand-writing he is acquainted; but only experts, persons accustomed to, and skilled in the matter of hand-writing, may institute comparison between writings of unquestioned genuineness and the writing in dispute, and give an opinion. *Moon v. Crowder*, 72 Ala. 88; 1 Greenl. on Ev., § 596; 3 Brick. Dig. p. 289, § 626; p. 432, § 380; 1 Brick. Dig. p. 879, § 1070; *Williams v. State*, 61 Ala. 33.

The diagram proposed to be commented on in argument by the defendant's solicitor, had not been offered in evidence on the trial, and the court properly refused to permit him to make such use of it. The fact that it may have been proven and used on the preliminary trial before the justice of the peace, did not authorize such use of it on the last trial.

We are not prepared to hold that the remark of the solicitor, to which the first exception was taken, was not authorized, as a reply to the argument of the defendant's counsel. The other assertion of the solicitor, reserved for consideration, was objectionable; but the prompt action of the court in excluding it from the jury was proper; and we think removed from their minds all improper influence which may have resulted from the objectionable assertion.

The verdict of the jury was received by the court in the presence of the defendant. This is all that is required by the law. The court showed very marked consideration for the defendant and his counsel, in waiting as it did, and its endeavor to find the counsel of defendant before receiving the verdict.

The refusal of the court to delay the case until witnesses not summoned could be sent for, was in the discretion of the court, and not revisable.

This brings us to the consideration of the only remaining, and the most important question in the record. After making the signature above referred to, defendant's counsel asked the court to delay the trial until he could summon experts, in order to have them compare the signature made in court with that to the letter, and to testify in the matter. In refusing the motion, the court remarked in the presence of the jury, to which exception was taken: "It is admitted that the only purpose of proving that Collins wrote the letter, is to show that his feelings towards the defendant are unfriendly. In answer to a question, he admits this, when he said that he had said he would send defendant to the coal mines if he could. I do not think, if you were to prove that the witness Collins wrote the letter, that it would amount to much, in view of this admission, and I decline to delay the trial." Whether the witness had in

[Griffin v. The State.]

fact said "he had said he would send the defendant to the coal mines if he could," was a question to be ascertained by the jury; and if the witness had so stated, it was for the jury to weigh this statement, and not for the court to declare its effect. The intention of the court doubtless was, to declare that as the defendant had the full benefit of proof of ill-will, by the admission of the witness himself, any additional proof on this point was unnecessary, and "would not amount to much."

We can not say that the entire jury so referred and applied the statement. The intimation that "such proof would not amount to much," may have led the jury to the conclusion that ill-will or threats of the witness, showing the state of his feelings towards the defendant, would not amount to much; and in considering his testimony, the jury may have been influenced by this view of it. We know that jurors are easily influenced by remarks from the bench, and the slightest intimations of the court are seized upon and exert a controlling influence upon them. It may be that the defendant's conviction resulted more from the testimony of this witness, than that of any other witness examined on the trial. We can not judge from any thing in the record, of the character of the testimony of the witness.

The weight to be given to evidence is wholly within the province of the jury, and any invasion of this province by the court in its orders is error; and any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, unless it be clearly shown that such remarks have been explained and excluded from them. It may be thought that the criticism of the court is too restricted and technical; but the principle involved is of such paramount importance, it would be dangerous to permit the least infringement of the rule to pass without correction. The separate province of the court and of the jury must be jealously guarded, carefully recognized and preserved. It is an "anchor sure and steadfast" to protect those on trial for a violation of law, and to restrain the courts from the exercise of undue influence upon the juries, to whom is committed the important and exclusive right of weighing the evidence. The witness had denied that he wrote the letter. If it had been proved that he was in fact the author of the letter, such proof tended to impeach his veracity, as well as to show unfriendly feelings. This case is clearly distinguishable from that of *Meinaka v. State*, 55 Ala. 58; *Campbell v. State*, 55 Ala. 80; and the conclusions reached are sustained by the policy and rules of law as there declared.

[Martin v. The State.]

For this single error, the cause must be reversed and remanded.