57 So.2d 832

## COOK v. STATE.

### 6 Div. 274.

Court of Appeals of Alabama.
March 13, 1952.

450

T. K. Selman and Thomas Leon Beaird, Jasper, for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

The accused was indicted and convicted of the offense of grand larceny, more specifically that he stole timber from the lands of the State of Alabama.

The prosecution in the main anchored its evidence on these circumstances:

The foresters discovered that several pine timber trees had been cut on the State's lands and the logs from the trees had been removed.

The appellant delivered some pine logs to the sawmill of Berry Lumber Company. A cut from a stump in the forest and one from a log that appellant sold to the sawmill were brought into court. An expert witness made a comparison, and the effect of his testimony was that the two portions or parts came from the same tree.

The defendant claimed that the logs he sold came from his own land or lands in which he had an interest.

The first witness introduced by the State was the chief engineer of the Department of Conservation. His testimony in the main related to the survey which he made of the lands from which the timber was missing.

The next witness was a forester of the State Department of Conservation. He related the circumstances about securing the sections or segments of the tree. ·He testified also as an expert in the matter of the comparison of the two parts.

During the direct examination of these two witnesses, counsel for the appellant interposed frequent objections to questions. There is no indication that the objections were frivolous. It appears that counsel was attempting to protect the interest of his client as of course he had a right to do.

The examination was · at times rather tedious. In *many* instances the trial judge interrogated the witnesses. Appellant's attorney objected to the court asking the questions.

This pattern of procedure continued pretty much throughout the progress of the trial, but more particularly prior to the incident we now copy from the record: ·

"Q. Just show us what you did with reference to the stump out there.

"(Witness puts sections of log together)

"Q. How long have you been in the Forestry business? A. About fifteen years. .

"Q. You say that is pine? A. Yes, sir.

"Q. Point out to the jury the features of those sections which show the similarity.

"Mr. Selman: I object to that, it is not the best evidence, the jury is here they can see for themselves.

"The Court: During your fifteen years experience as a forester, have you observed trees and the nature of trees to find out about the different growths, their age and history and things of that kind?

"The Witness: Yes, sir.

"The Court: How do you tell the age of a tree?

"The Witness: By counting the annual rings as they show on the cross sections.

"The Court: Have you counted the rings on these?

"The Witness: No, sir.

"The Court: In your judgment, are those pieces of wood from the same stump?

"Mr. Selman: I want to object to that, if the Court please, it invades the province of the jury, calls for a conclusion of the witness, it is incompetent, irrelevant and immaterial and it is asked by Your Honor instead of the Solicitor.

"The Court: Mr. Selman, is it your contention that you don't want all the evidence brought out—

"Mr. Selman: I except to the Court's remark, and I want to make a motion for a mis-trial because Your Honor has asked me that in front of the jury. I certainly want all the evidence brought out that is legal and proper, that is why I am here as an attorney.

"The Court: Do you object to the Court asking any questions?

"Mr. Selman: I object to the Court asking so many questions that the Court apparently assumes the prosecution. It is my understanding that the Judge acts as a referee to pass on the legality or illegality of evidence, and a referee doesn't take the ball and start pitching.

"The Court: This is not a ball game, Mr. Selman.

"Mr. Selman: No, sir, I think it is much more important than that. Have you ruled on my motion?

"The Court: Your motion is overruled.

"Mr. Selman: We except."

We recognize, of course, the right that the trial judge has to interrogate witnesses. 53 Am.Jur., Trial, Sec. 75, p. 74; Brandes v. State, 17 Ala.App. 390, 85 So. 824; Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692.

However, the examination of witnesses is the more appropriate function of counsel, and instances should be rare and conditions exceptional which will justify the presiding judge in conducting frequent and extensive examinations.

In the case at bar we do not conclude that reversible error should be predicated on the sole fact that the judge did propound many questions to witnesses. Our view, however, forces the conclusion that this frequent practice magnified and enlarged the significance and possible injurious effect of the judge's statement to counsel. The statement was: "Mr. Selman, is it your contention that you don't want all the evidence brought out—"

The setting of the assertion is shown in the quotation from the record supra.

Our review is invited by the methods indicated and also by motion for a new trial.

The approach to this inquiry must be referable to this fundamental question: Were the substantial rights of the appellant prejudiced by what was said by the trial judge?

If our answer to this question depended upon a finding that the judge intended or supposed that his statement to the attorney would be harmful to the rights of the defendant, we could without hesitation answer the query in the negative. But this determination is not the extent of our reviewing task.

The average juror does not always grasp the real significance or true meaning of the interposition of an objection by counsel. If the presiding judge questions the sincerity or propriety of an objection and intimates in effect that it is an effort to withhold material testimony, the jury may adopt this view and follow the suggestion throughout the progress of the trial. If so, clearly, the appellant's attorney when he makes an objection places himself in a false light before the jury.

The constitutional right of the accused to be heard by counsel could be seriously restricted, even to the point that the right is in effect denied.

452

■ It is expected of the trial judge, in the exercise of perfect impartiality, to see that the law is properly administered and justice done both in respect to the State and the accused.

The position of a presiding judge is stated in Griffin v. State, 90 Ala. 596, 8 So. 670, 673: "The weight to be given to evidence is wholly within the province of the jury, and any invasion of this province by the court in its orders is error; and any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, unless it be clearly shown that such remarks have been explained and excluded from them. It may be thought that the criticism of the court is too restricted and technical; but the principle involved is of such paramount importance, it would be dangerous to permit the least infringement of the rule to pass without correction. The separate province of the court and of the jury must be jealously guarded, and carefully recognized and preserved. It is an 'anchor sure and steadfast' to protect those on trial for a violation of law, and to restrain the courts from the exercise of undue influence upon the juries, to whom is committed the important and exclusive right of weighing the evidence."

The case of Moulton v. State, 199 Ala. 411, 74 So. 454, 456, supports the contention of the appellant. It appears that the defendant's attorney required the trial judge to deliver his charge to the jury in writing. The request invoked this opening statement in the charge: *"For the first time in the history of this court since the appointment of an official stenographer so far as I am advised, the judge of the court has been requested to render his charge to the jury in writing.* This is a privilege which the law gives, but whether I will be able to make the law in this case more plain to you in a written charge than I could by minutely explaining it to you orally it matters not."

In response to the review the majority of the members of the court concurred in the view that the statement "carried a necessary implication, a forcible suggestion, that the prisoner, or his counsel, was engaged in a useless performance and unnecessarily delaying the rapid progress of the case to a conclusion. It thus reflected unfavorably upon the merits of the defense *. * *."

In the case of Parker v. State, 24 Wyo. 491, 161 P. 552, 556, during the direct examination of the accused the presiding judge said: "Wait a minute, ask him some legal question. I want to be fair in this case. You try it legally, Mr. Rose."

The court held that the trial judge committed an error which, with other errors in making disparaging remarks to the defendant's counsel throughout the trial, was ground for a new trial.

These two authorities are indicative of the mind of the appellate courts when it appears that the remarks of a trial judge may have influenced the jury against the rights of the defendant.

See also Owens v. State, 19 Ala.App. 621, 99 So. 774; McKinley v. Campbell, 217 Ala. 139, 115 So. 98; Barker v. State, 2 Ala. App. 92, 57 So. 88; Holland v. State, 24 Ala.App. 199, 132 So. 601; Daggett v. Boomer, 210 Ala. 673, 99 So. 181; Rigell v. State, 8 Ala.App. 46, 62 So. 977; Powell v. State, 20 Ala.App. 606, 104 So. 551; Pate v. State, 19 Ala.App. 243, 96 So. 649.

■ To fairly and intelligently review questions of instant concern the "general atmosphere" of the trial must be taken into account. We have attempted to disclose this by a rather detailed delineation and discussion of the incident that could have had bearing on the statement of the trial judge.

As we have indicated, the conviction of the accused depended on the establishment of one character of evidence. This inquiry was in the process of development at the time the statement was made. At this point the presiding judge had taken over the matter of questioning the witness.

The defendant denied that the log from which the block was taken came from the State's land. He introduced witnesses to support this claim.

We are forced to the conclusion that prejudicial error appears from the record.

The judgment below is ordered reversed and the cause remanded.

Reversed and remanded.