J. E. LUKER

v.

STATE.

4 Div. 337.

Court of Appeals of Alabama.
June 24, 1958.

Rehearing Denied Aug. 19, 1958.

Hiram J. Brogden, Jr., and Frank J. Tipler, Jr., Andalusia, for appellant.

**550**

John Patterson, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Chas. B. Bailey, Jr., Livingston, of counsel, for State.

HARWOOD, Presiding Judge.

This appellant has been adjudged guilty of raping Annie Lois Montgomery.

The appellant is a white man, and at the time was some 53 years of age. Annie Lois Montgomery is a colored girl, and was 14 years of age at the time of the offense charged.

Counsel for appellant in their brief state that there is no question of the sufficiency of the evidence to support the verdict and judgment, if such evidence be believed by the jury under the required rule. That the jury did so accept the State's evidence is apparent from the verdict

After our study of the record we too are clear to the conclusion that the State's evidence was amply sufficient to support the verdict and judgment. In view of such conclusion, both on the part of appellant's counsel and of ourselves, we see no necessity for setting forth the sordid evidence developed in the trial below, except in so far as the evidence, or parts thereof, may be material to this review.

The evidence presented by the defense was directed toward showing an alibi, and also toward showing that the appellant, because of his age and prostate trouble from which he suffered, was incapable of having sexual intercourse twice within a period of about fifteen minutes, as testified to by the prosecutrix.

Such conflict between the evidence presented by the State, and by the defense, presented a question of fact solely within the province of the jury to resolve.

Counsel for appellant vigorously argues that error infests this record because of the court's prejudicial remarks directed toward defense counsel during the course of the trial; because of the court's action in questioning certain witnesses; and because of the court's rulings in certain instances.

It appears that during the direct examination of the prosecutrix, in the very early part of the trial, a situation developed which counsel argues amounted to the court compelling the appellant to give evidence against himself.

In this connection the record shows the following:

"Q. Is that the man over there in the brown suit and the green tie, is that the one that you pointed to? A. Yes, sir.

"Mr. Tipler: We object to leading. I thought she was pointing at Frank.

"The Court: I don't know. Mr. Frank can stand aside there if he wants so she can see him good. All right.

"Q. Now, Annie Lois—

"Mr. Tipler: Now, wait a minute, which one are you pointing to over there?

"A. The one with the glasses on, the suit and the green tie.

"The Court: Glasses on and what kind of tie has he got on? A. Green and brown.

"The Court: Green and brown. And is that the gentleman with the hat on the table there? Mr. Horne, would you mind standing back a little bit, please, sir, so she can see.

"Mr. Tipler. We object to this.

"The Court: Yes, sir, I know you are; overrule the objection.

"Mr. Tipler: And we except and we would like to point to the court that that is forcing the witness to testify against himself. We ask for a mistrial of the case.

"The Court: No, sir, I haven't asked Mr. Horne to move; I just asked—I mean the witness—the defendant to move.

"Mr. Tipler: We object. Let the record show that we made an objection on that ground.

"The Court: Yes, sir. Let the record show that the Court asked Mr. Horne that where he was sitting to move back a little bit that he was sitting between the witness and the defendant and the Court asked him to do it so the defendant could see the witness if she was to identify him— I mean the defendant. All right.

"Mr. Tipler: We object to it on the grounds I stated. I would like to point out that the Court pointed to the witness—to the defendant.

"The Court: No, sir, the Court wasn't pointing at the defendant; the Court was pointing in that direction and directing the witness' attention, she was—Let the record show that the witness was looking into the direction and we were merely pointing in that direction toward Mr. Horne in an effort to get Mr. Horne to move back; not trying to identify the defendant.

"Mr. Tipler: We object to that on that grounds, that is—

"The Court: All right.

"Mr. Tipler: That is forcing the defendant to testify against himself.

"The Court: We are not accusing Mr. Horne of wilfully obstructing the view; we are not doing that at all, we are just merely asking as a matter of courtesy to the court. All right.

"Mr. Tipler: We except.

"Q. Now, Annie Lois, what time of day was it when—

"Mr. Tipler: In case we missed, we except to the ruling of the Court.

"The Court: All right, there are no exceptions needed under the law.

"Mr. Tipler: I know but I would like to do it anyway.

"The Court: But you can do it as a matter of habit if you want to.

"Q. All right. What time of day was it that you were picked up by this white man? A. It was about 3:30.

"The Court: Let the record show that the court has not asked the de-

fendant to move, stand or budge in this case. All right, sir.

"Mr. Tipler: The court asked him if it was the one with the hat in front of him.

"The Court: Sir?

"Mr. Tipler: Didn't the Court ask him if it was the one with the hat in front of him?

"The Court: The court asked him if that was the man that had the hat in his lap in front of him and the defendant moved and put a hat on the table; that is what happened about it, the court didn't ask him to move the hat or anything else.

"Mr. Tipler: Yes, but the court remarked if it was the one with the hat.

"The Court: Yes, sir, the court did ask him if it was the gentleman with the hat there in his lap, yes sir. All right.

"Mr. Tipler: We except."

■ The above excerpt clearly shows that the court acted only to have Hon. Frank G. Horne, one of the defense counsel, move, in order to permit and make more certain the identification of the appellant by the prosecutrix. We find nothing in this occurrence that could rationally be construed as forcing the appellant to testify against himself.

On a number of occasions during the trial below the court would accompany its rulings with certain statements or observations. The following are typical:

"(On page 13 of the transcript the prosecutrix had pointed out the defendant in open court as the man with the glasses on.)

"Q. (Mr. Tipler) You had been reading about all of this stuff in the papers, hadn't you, about the whites and the negroes?

"Mr. Boswell: We object to that.

"The Court: Wait a minute, sustain the objection to that.

"Mr. Tipler: I am going to show that is the reason she made up the tale.

"The Court: Mr. Tipler, you know that last question has got nothing to do with this case.

"Mr. Tipler: Why if the court please, I think it does have something to do with it, that is my honest judgment.

"The Court: I disagree with you.

"Mr. Tipler: Well, we except to the ruling of the court. You are the boss and I have to follow you but I think it has got something to do with it.

"The Court: You are a good lawyer; you know what is admissible and not admissible, and what is foreign and what is prejudicial and what not. You are a very good lawyer.

"The following transpired on page 42:

"The Court: Wait a minute, gentlemen, please. If you all want to testify in this case we will just stop and let you all testify.

"Mr. Baldwin: I think it is our turn, they have been testifying over on that side of the table long enough.

"Mr. Tipler: Well, they have too.

"The Court: That is right. I am talking about both sides.

"Mr. Tipler: I am just examining the witness.

"The Court: Yes, Mr. Tipler, but you are doing it in a way that;—Mr. Tipler, I think you are a very good lawyer, and you know better in some respects; go ahead."

We have carefully examined this record in respect to such remarks, and find that in only one instance did counsel object, or

except to the remarks made by the court. This instance we will advert to below.

■ The rule as to reviewing allegedly prejudicial or improper remarks by the court, or by counsel, has been recently set forth by Merrill, J., in Nichols v. State, Ala., 100 So.2d 750, 753, as follows:

"We think the remarks of a trial judge come within the same rules as improper argument or remarks of counsel. The general rule is that improper argument of counsel (or improper remarks from the court) is not a ground for a new trial or subject of review on appeal unless there is due objection by counsel or a motion to exclude, a ruling thereon by the court and an exception thereto, or a refusal of the court to make a ruling. Washington v. State, 259 Ala. 104, 65 So.2d 704; Anderson v. State, 209 Ala. 36, 95 So. 171.

"An exception to this general rule, requiring appropriate objection or motion invoking corrective instruction or action by the trial court, is where the remark or argument of counsel (or court) is so grossly improper and highly prejudicial to the opposing party as that neither retraction nor rebuke by the trial court would have destroyed its sinister influence. Anderson v. State, 209 Ala. 36, 95 So. 171."

■ As to the instance in which counsel did object to the remarks of the court, we excerpt from the record this portion, which follows immediately after State's witness, Annie Sue Lige, in answer to counsel's request, on cross examination, had repeated in substance her testimony given on direct examination:

"Q. Now, say it again.

"Mr. Brogden: Sir, we object to that.

"The Court: Sustain the objection.

"Mr. Tipler: If the court please, it is just memorized like the others.

"Mr. Baldwin: That is your conclusion.

"The Court: Mr. Tipler, you can argue that all you want to but the argument hasn't arrived yet. I see very easily how you can confuse a witness about that; and you can argue if you want that she has memorized, and then if she varies she hasn't told the same thing, and she had contradicted herself. So we think you are trying to trap the witness unnecessarily.

"Mr. Tipler: We object to the remark of the Court.

"Mr. Horne: We object to the remark of the Court.

"The Court: All right.

"Mr. Horne: Commenting upon the facts of the evidence.

"The Court: All right, now, gentlemen; we are not commenting upon the facts of this evidence, and don't intend to, but we are certainly reprimanding counsel for his way of handling this case.

"Mr. Tipler: I am not objecting to the remark—

"Mr. Horne: We are objecting to the remarks concerning the counsel in the presence of the jury.

"The Court: All right.

"Mr. Tipler: I am not objecting myself for being reprimanded, because I am trying to represent me a client. I don't mind being reprimanded for it, if it takes it, but I will say this; but I do object to the Court invading the province of the jury.

"The Court: Yes, sir. The Court is not trying to invade your province, gentlemen of the jury at no condition. It is your privilege to decide the facts in this case as you see them, and we will so instruct you when the time comes; but the court has got the duty

to perform in running this case and seeing that it is run properly and properly presented, to you and we are exercising that prerogative."

After the cross examination of the witness had been completed, and the witness excused, the court made the following remarks to the jury:

"The Court: The court while speaking of Mr. Tipler, speaking to Mr. Tipler, and speaking to you about it, made the statement that he was trying to unnecessarily trap the witness. We want to eliminate that—those words from you from that statement awhile ago. We didn't mean exactly that. We used the wrong word, and we do not mean to imply that Mr. Tipler is resorting to that kind of means in trying this case. All right."

Further, during the oral instructions to the jury the court stated:

"During the progress of this trial, there have been numerous objections on the part of counsel for the defense; there has been several colloquies between counsel for both sides; and the Court, but after all, gentlemen, what is the Court's function? To tell you frankly we have not—are not biased one way or the other in this case; that is not our duty and responsibility. We have made rulings from time to time, we have issued orders from time to time in an effort, gentlemen, to get the facts of this case before you in a fair and impartial manner; to let in only such evidence before you as belongs to be in there; and to keep out from before you irrelevant, immaterial, incompetent evidence, to the end so that you may not be trying side issues or be actuated by any factual prejudices, but only one thing, to keep your eyes upon the evidence in this case. The evidence that you ought to consider under the law in determining whether or not this defendant is guilty or innocent, and the rulings of the

Court, were made in the interest of both sides, the State and the defendant, as best we could. So if during the progress of this trial you might have gotten the idea or drawn an inference that this Court leans one way or the other as to whether or not this defendant should be convicted or acquitted, then we ask you to dismiss those inferences from your mind and remember one thing, that the responsibility is yours without any comment from the Court one way or the other. Counsel for both sides have been very *dilligent* in trying to present to you, you might say over-zealous sometimes in trying to present to you all the facts in the case, all the evidence that they have; that is commendable on their part. They have argued the case to you at length, argued what they considered the facts, and lawful argument, for what reason? To try, gentlemen, to get before you both sides of this thing, all the facts and to show you what relation and what bearing these facts have upon the issues in this case whether this defendant is guilty or innocent. So, gentlemen, of the jury, when you go back there in the jury room I would certainly suggest and I believe you will respond to your duty as jurors and determine this case as best you can on the evidence; and when you have done that nobody can say aught against your verdict because all you can do gentlemen is to act according to your consideration in the light of the facts, as you see them, the facts that come from thhe evidence on the witness stand; and when you have done that, you have done as much as any person could do."

■ Clearly the court, in its discretion, was fully justified in sustaining the State's objection to the request of defense counsel to the witness to "Now, Say it again," such request calling merely for repetitious testimony. The court's added observation that defense counsel was trying to trap

the witness unnecessarily, was improper. That the remark was inadvertent is we think clear from the court's later instructions to the jury.

In Griffin v. State, 90 Ala. 596, 8 So. 670, 673, the court stated that "any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, *unless it be clearly shown that such remarks have been explained and excluded from them.*" (Italics ours.)

There is no question but that the court in the present case fully attempted to explain its remarks to the jury, and to exclude them from the jury. In light of the court's efforts we are unwilling to base a reversal of this case on this instance, concluding that the remarks of the court were not be retracted and their influence re- not so grossly improper but that they could moved by the later very positive efforts of the court to so do.

During the cross examination of Mr. Watson, Chief of Police of Florala, the record shows the following:

"Q. She tell you, or did she not tell you that she was raped twice? A. She didn't say that she was raped twice.

"Q. Did she say the man had intercourse with her there twice during that afternoon? A. She said—do you want me to tell you exactly what she said?

"Q. No, sir. A. I can't answer that question yes, or no.

"Q. All right, if you can't answer it yes or no, let it go. You knew or had reason to believe that it was highly improbable that a 53 year old man could ever rape anybody twice?

"Mr. Boswell: We object to that.

"The Court: Sustain the objection.

"Mr. Horne: Sir?

"The Court: Sustain the objection to that.

"Mr. Horne: All right, we except.

"All right, that is all."

On redirect the witness was permitted to testify, over appellant's objection, as to what the prosecutrix had told him, as follows:

"She told me that he had done it on the seat and he done it on the ground; and I says 'You mean he done it twice,' and she said 'yes.'"

In permitting Mr. Watson to testify as above, the court stated that he was letting the testimony in to clarify the testimony elicited on the cross examination, since an implication might have arisen from the questions on cross examination.

■ The defense having brought out the fact of the conversation, and then having cut off the witness from answering whether the prosecutrix had stated that appellant had had intercourse with her twice by insisting upon a "yes" or "no" answer, it was certainly permissible for the State to bring out what the prosecutrix had said in this regard. Colvin v. State, 32 Ala. App. 142, 22 So.2d 544, and cases therein cited.

In his oral charge to the jury the court, after charging as to the possible verdicts that the jury could return, further charged as to the effect of fixing punishment by means of a quotient, and explained what would constitute a quotient verdict, and what would not. The court, in this connection, repeatedly cautioned the jury that no implication should arise from his instructions along this line as to what the court thought, or that the court was trying to tell the jury what to do, or making the least suggestion to the jury.

■ While we have never before seen such instruction given by a court in its oral charge, novelty alone will not render it a cause of reversal. A requested written

charge explaining to the jury what constitutes a quotient verdict may be given without error as explanatory of the oral charge of the court and other written charges. Fidelity & Deposit Co. of Maryland v. Adkins, 222 Ala. 17, 130 So. 552. See, also, Western & A. R. Co. v. Young, 83 Ga. 512, 10 S.E. 197, where the refusal of such a charge was held not to be error.

■■■■■ The court's instructions concerning quotient verdicts was a correct statement of the legal principles governing this matter. A court is permitted to state the applicable law of the case to the jury. In connection with charging the jury as to the possible verdicts they may render, the court must further charge as to the permissible punishment to be fixed by the jury, where such duty devolves on the jury. Rape is an offense in which the jury must fix punishment if the jury determine the accused to be guilty. We therefore think it within the province of the court to further instruct the jury, in the event they should find the accused guilty, as to what might be a proper, or an improper method of fixing the punishment. However, it is our view that such instructions should be given with utmost caution.

Counsel further argue that the court abused its prerogative in its examination of witnesses during the trial below.

■■■■■ In this connection the record shows that at the conclusion of the testimony of the medical witness who had examined the prosecutrix, the court inquired of the witness if the tear he had testified about was on the inside or outside of the vagina; in two instances it is clearly inferable that the court did not, or could not hear the answer of the witness, and merely repeated the answer, in question form, which the witness affirmed; in another instance the court addressed questions to a witness to establish the predicate for the admission of a statement by the accused.

Clearly there was no abuse of the court's prerogative in these instances.

The prosecutrix had testified that during her ride with appellant prior to the alleged offense he had stopped at the home of Mitter Adams to see if his wife was there.

Mrs. Adams, as a witness, testified she could not identify the appellant as being the man who came up on her porch on the afternoon in question.

Mrs. Adams further testified that a man sitting in the audience resembled the man who came up on her porch, but that the man in the audience was not the one.

The court then asked the witness if the man in the audience resembled the appellant. Counsel for appellant objected to the court's question and the court sustained the objection, adding, "if you don't want to let him see him," after its sustention. However, no objection was interposed to the court's remark. Again we can read no abuse of the court's prerogative in this instance, and the court sustained the objection to its question.

The prosecutrix's testimony on direct examination covered some twelve pages. She was then subjected to a vigorous cross examination covering some twenty-five pages. An intervening witness testified for two pages, and the prosecutrix was recalled for further cross examination, this examination covering some nine pages. She was further examined on redirect for about a page.

Counsel for appellant then began a re-cross examination. During this re-cross examination the prosecutrix testified that the appellant had raped her twice, once on the seat of the truck, and once on the ground. Counsel for appellant then questioned her as to the length of time between the offenses, this examination going as for about one page. After about five more pages of re-cross examination the record then shows the following:

"Are you nervous? Huh? A. Yes, sir.

"The Court: All right. Just rest a minute and see if you can get your nerves back together.

"How old are you? A. Fourteen.

"The Court: You ever been in a courtroom before? A. No, sir.

"The Court: All right, let's wait a minute and see what she says.

"You see, what we are trying to do is to get off to the jury, both sides here, just exactly what happened. If you can tell it that way. You see, the jury would like to know your side of the story and they won't know anything unless you can remember it or tell it, and tell it so they can hear and so that is what we are trying to get you to do.

"What do you mean by being raped twice is what I want to know? Did he put his penis in you twice or once? A. Twice.

"The Court: Where was it the first time? A. The first time—

"Mr. Tipler: If the Court please, we object to the court examining our witness, we were cross examining.

"The Court: I know that; I am going to try to get it to this jury, if I can.

"Mr. Tipler: We are going to except.

"Mr. Horne: We except."

The court continued its examination for some three more pages, stating during its examination:

"The Court: Let the record show that this witness here is a child of tender age, fourteen years of age. She has never been in the courtroom before and the court is exercising its prerogative in examining the witness in order to try to get over to the jury, if I can, just exactly what happened so that the— the witness is apparently frightened."

After this appellant's counsel resumed his cross examination for some four pages more.

Thus it appears that the examination of the prosecutrix on direct, and cross, covered some fifty-eight pages, of which about forty-three pages were cross, or re-cross examination. The court's examination covered some three or four pages.

In Cook v. State, 36 Ala.App. 449, 57 So. 2d 832, 833, the late Presiding Judge Carr observed:

"We recognize, of course, the right that the trial judge has to interrogate witnesses. * * *

"However, the examination of witnesses is the more appropriate function of counsel, and instances should be rare and conditions exceptional which will justify the presiding judge in conducting frequent and extensive examinations."

The conditions prevailing, at the time the court questioned the prosecutrix, in our opinion justified the court in exercising its prerogative to question the witness and clarify her testimony, if such clarification were needed.

It was not only the court's prerogative to so act, but its duty, if he deemed it necessary to elicit proper evidence bearing on the issues. McFarland v. State, 22 Ala.App. 609, 118 So. 500.

Furthermore, it appears that the testimony elicited by the court's examination was substantially the same as the testimony given by the prosecutrix on her preceding cross examination, and again given on her further cross examination resumed after the court's questioning. We cannot see therefore that the accused was probably injured in any substantial right by the court's action in the premises.

The court gave a full and lengthy instruction to the jury. In addition it gave some twenty-two written charges at appellant's request. The court refused to give six charges requested by the appellant.

These six charges were refused without error, in that they were either affirmative in nature, or were covered by the oral charge

558

of the court, or other charges given, or were inapplicable under the developed evidence.

This record is rather voluminous. It is replete with instances wherein the court's ruling was invoked. We have written to those matters in which discussion may have been indicated. In the interest of reasonable brevity we have omitted discussion of instances wherein the court's ruling was palpably correct.

Concluding that no error infects this record which is injurious to the substantial rights of this appellant, the judgment is due to be affirmed, and it is so ordered.

Affirmed.

## On Rehearing

In his brief in support of the application for rehearing counsel for appellant has requested that we set out that portion of the court's oral charge in which the jury was instructed as to a quotient verdict. In order to afford a full review we are glad to comply with this request. In this connection, the court charged as follows:

"Now, I am going to charge you another thing, without any implication from it whatsoever as to what we think about it, but sometime jurors when they decide, that they are known to do this: When they decide the defendant is guilty in order to be imprisoned in the penitentiary for a number of years, and they have some difficulty in agreeing upon the number of years, they make an agreement among themselves, each one of us write down on a slip of paper the number of years that we think the defendant ought to have; and we will add those numbers of years up and then we will divide it by twelve and we agree that we will impose imprisonment on the defendant for the number of years according to the division by twelve. Now, that can't be done that way. If you make any such agreement before you make the division or during the division, then that would be what

we call a quotient verdict; and a quotient verdict is unlawful. You can not make any such agreement that is all abiding by that division. Now, if you did that, and the court were informed of evidence of that fact, the court would have to set aside the verdict, because it is an illegal verdict. But on the other hand, there is no law to prevent you from saying if you want it fixed that way if you have any idea how it ought to be done in your deliberations. And I want to say here when we give you this definition of quotient, we are not trying to tell you that ought to be done, or this defendant ought to be guilty, or imprisonment in the penitentiary, we are just merely telling you some of the things you can't do in the event you do find him guilty. Now there is no law against you adding it up—WE ARE not making the suggestion that you do—there is no law against you adding it all up, and seeing how it comes out, and THEN adopting that if you want to; but you can not make any agreement before hand.

"In excepting to the charge, the following appears.

"We except to that portion of the charge where the Court charged the jury about a quotient verdict.

"We except to that portion of the charge where the court said, 'there is no law against you in your deliberations, to keep you in your deliberations, from adding it up, and seeing how it comes out, then adopting that.'

"The Court: All right, gentlemen of the jury, of course, when you add that up, if you do, add it up, I am telling— I am not telling you to; and, of course, you have a right to adopt it as your verdict if you think that is the proper course to—

"Mr. Tipler: We except to that what the Court just said, 'When you add it up.'

"The Court: All right, gentlemen, you retire and make up your verdict."

We adhere to our former conclusions, and accordingly this application for rehearing is overruled.

Application overruled.