Talmadge Pruitt was convicted by a DeKalb County jury of the offense of burglary in the first degree and sentenced by the court to ten years' imprisonment in the penitentiary. The facts as adduced by state's evidence are unusual. At 6:30 a.m. on April 4, Mr. Tom Fricks received a phone call from appellant Talmadge Pruitt, who asked Fricks when he was leaving to go into town. Appellant then verified with Fricks that the Frickses' son had gone away camping overnight. Just after Fricks left his house, the victim in this case, Mrs. Ramola Fricks, heard her door bell at her garage door ring. She testified that only strangers used her front door, since everyone who knew them used the garage door to enter the home.
Mrs. Fricks went to the garage door, which then swung open, and a man stepped into the house. Mrs. Fricks described him as being a very large man wearing blue and white tennis shoes and a ski mask with a stocking underneath the mask. He grabbed Mrs. Fricks, put her arms behind her back, stuck a gun in her side and began punching and pushing her around the house. She said to him, "Talmadge, if money is what you want, there lays one." The man continued to push her around the house, made her get on her knees and tied a blindfold on her. She could see around the blindfold. After forcing her to lie on the bed and pull her panties off, he yanked her gown up around her neck, and felt her. She told him that her doctor had said that if any man "bothered her" within the next few weeks she would bleed to death. The intruder then told her to get on her knees at the foot of the bed, and proceeded to expose his penis. Mrs. Fricks then told the man, "No, I am not going to do this." He again began to jerk and push her, she grabbed for his gun and he finally wrested it from her grasp, cutting her thumb severely.
Thrown to the floor, she began crawling away, telling the man to go ahead and kill her, that she was going to get out of the house. She jumped out the window and ran toward her neighbor's house. The neighbor to whose house she retreated said that he found her running down the garden in her gown with blood all over her. She told him that someone had just broken in her house and that she knew who it was but she just couldn't believe it. She identified the appellant as the perpetrator. She later stated she had known him since 1957 and had known him so long she could recognize him by his movements without seeing his face and that she also recognized his voice.
Tom Price, an investigator with the DeKalb County Sheriff's Department, found a pillow at the home of the victim which did not belong to her. He took the pillow to the residence of the appellant where the appellant's wife, in his presence, identified the pillow as belonging to them.
The defense was one of alibi.
 I
Appellant contends first that the court should have charged the jury on the lesser included offenses of burglary in the second degree and criminal trespass in the first degree. The state, citing Williams v. State, 377 So.2d 634 (Ala.Cr.App.),writ denied, 377 So.2d 639 (Ala. 1979), argues that where a defendant denies the event in *Page 456 toto, the court is not obliged to charge on a lesser included offense.
The appellant admits the validity of this argument but contends that the rule is unconstitutional. We disagree. In our judgment, the court conformed to the law and committed no error in refusing charges on lesser included offenses.
 II
Appellant next contends that the trial court should not have allowed into evidence the testimony regarding the pillow. When the investigator produced the pillow found at the victim's home, the appellant's wife stated that the pillow was similar to the one which was missing from her residence. The appellant's wife then turned to the appellant and asked him how the pillow came to be found at the Fricks residence. To this implicitly accusatory question, the appellant evasively responded that he guessed that "the dogs drug it up." The appellant's wife then stated, "Well, the pillow was here last night."
Identification of the pillow by appellant's wife as being joint property of herself and appellant, in his presence and not denied by him, is admissible. Failure to deny an oral incriminatory statement is an implied admission and has long been admissible in this state. See C. Gamble, McElroy's AlabamaEvidence §§ 193.01 (1), 193.01 (2) (3d ed. 1977).
 III
Appellant finally contends that the court erred in not informing the jury of the range of punishment. A jury must be informed as to the range of permissible punishment when they have the duty to impose punishment. Luker v. State, 39 Ala. App. 548, 105 So.2d 834, cert. denied, 268 Ala. 346, 105 So.2d 845
(1958). Where the jury has nothing to do with fixing punishment, instructions to the jury as to punishment are not necessary. Hogg v. State, 18 Ala. App. 179, 89 So. 859 (1921). Such instructions are, in any event, usually misleading since trial courts are not allowed to explain such factors as probation, parole, and credit for "good time", all of which can affect the actual length of punishment.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.