403 So.2d 293 (1981)
Phillip L. RICHARDSON
v.
STATE.
5 Div. 508.
Court of Criminal Appeals of Alabama.
January 20, 1981.
Rehearing Denied February 24, 1981.
John A. Tinney, Roanoke, for appellant.
Charles A. Graddick, Atty. Gen. and J. Thomas Leverette, Asst. Atty. Gen., for appellee.
HARRIS, Presiding Judge.
Appellant was jointly indicted with Jack L. Whitten for murder in the first degree involving the death of David Dukes whose death occurred in a cemetery in the Pot Ash Community of Randolph County, Alabama, on December 9, 1979. A severance was granted and appellant was arraigned on the indictment in the presence of his attorney. He waived the reading of the indictment and pleaded not guilty and not guilty by *294 reason of insanity. He was convicted of murder in the first degree and the jury fixed his punishment at life imprisonment in the penitentiary. After sentence was imposed he gave notice of appeal and was found to be indigent. He was furnished a free transcript and trial counsel was appointed to represent him on this appeal.
On December 9, 1979, appellant and the deceased along with four other persons left Columbus, Georgia, en route to Randolph County, Alabama. The purpose of the trip was to visit the cemetery in the Pot Ash Community and clean the grave of Danny Richardson, the brother of appellant. Before leaving Columbus, they bought a half gallon of whiskey and all the occupants of the car started drinking and they were joking, talking and generally having a good time. Appellant and the deceased became intoxicated before reaching the cemetery.
The evidence tended to show that appellant and the deceased were good friends and lived together in appellant's mother's house in Columbus prior to the date the deceased was killed. Upon arriving at the cemetery appellant and the codefendant started gathering flowers from various graves and put them on the grave of appellant's brother. While they were in the process of getting the flowers, the deceased sat on the grave slab or marker of appellant's father. Appellant told the deceased that he was going to kill him because his sister had shot and killed his brother. Appellant told the deceased to get off his father's grave and when he refused a fight ensued. The deceased was handicapped by reason of having an artificial leg resulting from an automobile wreck in which he was involved previously. Because of this physical disability and his degree of intoxication he was disadvantaged in protecting himself in combat with appellant. Appellant grabbed the deceased and removed him from his father's grave and the deceased rolled on the ground between two graves and tried to cover his face from the blows from appellant's fists and started begging appellant not to kill him. He told appellant that he did not kill his brother but that his sister was the person who shot him. Appellant picked up two bricks and struck the deceased on the side of his head with one of the bricks and the deceased died where he was lying between the two graves.
The expert who performed the autopsy testified the deceased's right leg was amputated eleven inches below the crest of the hip, "and there was a prosthetic device in place, or what is commonly referred to as an artificial leg." As to the cause of death he stated:
"The individual sustained a very forceful blow on the right side of the head from an object that was somewhat blunt, as opposed to being sharp. What this did was, jar the head and the brain internally rupturing blood vessels which produced hemorrhage in the head, producing pressure on the brain stem and vital portions of the brain, which resulted in death in my opinion."
Appellant testified that the deceased was his best friend and that he did not intend to kill him. He stated the deceased was sitting on his father's grave and he told him to move and when he did not he grabbed him by the arm and tried to pick him up and get him off the grave; that the deceased swung at him and he swung back and they started fighting. He then picked up a brick and hit him; that he was trying to protect himself; that in the fight with the deceased he received a scrape and a bruise on his head which caused him to bleed. It is clear that appellant was relying on self-defense.
After the conclusion of the direct examination and before a single question was asked by the District Attorney the court asked appellant the following questions:
"COURT: How far away was David from you when you threw that brick at him?
"A. About from here to that brown suitcase.
"Q. COURT: You were about 8 or 10 feet away?
"A. Yes sir.
"COURT: Is that correct?
"A. Yes sir.

*295 "COURT: Did Dukes have a gun or any sort of weapon he could have hurt you with?
"A. No sir.
"COURT: He had a bad leg, didn't he?
"A. Sir?
"COURT: You knew he had a bad leg, didn't you?
"A. Yes sir.
"COURT: He couldn't run fast, could he?
"A. No sir.
"COURT: He couldn't even walk fast, could he?
"A. He could walk good.
"COURT: You can run fast, can't you?
"A. Yes sir.
"COURT: You could run fast on that day, couldn't you?
"A. Yes sir.
"COURT: If you were scared, you could have just have just turned around and run away from him, couldn't you?
"A. I guess."
At the conclusion of the questions posed to appellant by the court counsel for appellant stated: "Judge, please note an objection to this entire line of questioning by the court." The court refused to rule on the objection.
The record reflects that the court asked numerous questions during the entire trial but none so devastating as those quoted above which had the effect of destroying appellant's attempt to establish self-defense.
In Sprinkle v. State, Ala.Cr.App., 368 So.2d 554, this court held:
"The trial judge is more than a mere moderator and it is his duty to conduct an orderly trial and to make certain as far as possible that there is no misunderstanding of the testimony of witnesses. Thus he may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he did not depart from a standard of fairness and impartiality."
The timing of the questions posed by the court to appellant precludes any argument that the examination conducted by him was necessary to produce needed evidence, create clarification, or do justice, which are the basic reasons such questions are allowed to be asked by the trial court. We hold the conduct of the trial court amounted to an abdication of his duties as a fair and impartial judge. His cross-examination of appellant was highly improper and prejudicial to the rights of appellant and constituted reversible error.
Jurors give great weight to testimony produced by questions from the trial judge. The series of questions asked by the trial court had the cumulative effect of negating any other testimony by appellant or other witnesses that would indicate he was acting in self-defense. The cross-examination of appellant by the court created an undue influence upon the jury and an atmosphere of ineradicable bias and prejudice toward appellant. No instructions from the judge could have removed the baneful effect of his questions.
The position of a presiding judge is stated in Griffin v. State, 90 Ala. 596, 8 So. 670, 673: "The weight to be given to evidence is wholly within the province of the jury, and any invasion of this province by the court in its orders is error; and any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, unless it be clearly shown that such remarks have been explained and excluded from them. It may be thought that the criticism of the court is too restricted and technical; but the principle involved is of such paramount importance, it would be dangerous to permit the least infringement of the rule to pass without correction. The separate province of the court and of the jury must be jealously guarded, and carefully recognized and preserved. It is an `anchor sure and steadfast' to protect those on trial for a violation of law, and to restrain the courts from exercise of undue influence upon the juries, to whom is committed the important and exclusive right of weighing the evidence."
*296 The "anchor sure and steadfast" was torn asunder and left in shambles by the conduct of the trial judge all to the great prejudice of the appellant.
Other issues are raised in which appellant contends reversible error was committed by the trial court but in view of what we have said we do not deem it necessary to treat them.
For the single error of the trial judge in taking over the cross-examination of appellant, in the circumstances shown by the record and set out herein, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur, except BOOKOUT, J., who dissents with an opinion.
BOOKOUT, Judge, dissenting:
In Holmes v. State, 22 Ala.App. 373, 115 So. 849 (1928), the then court of appeals stated:
"In the case of Register v. State, 19 Ala.App. 11, 94 So. 778, this court stated:
"`It was not only within the power of the court to propound questions to witnesses, but if justice required, or if it appeared necessary, it was the duty of the court so to do, and such action upon the part of the court cannot be construed as an aid to the prosecution or as being prejudicial to the substantial rights of the defendant.'
"The above excerpt is in line with well-recognized legal authorities which hold that, with certain exceptions, no rule of law exists which limits the power of a judge in a criminal trial to interrogate a witness during his examination. He may ask any question which either the state or the accused had the right to ask, or which it was their duty to ask, but which has been omitted, if the answer may be relevant. But the court should be very careful to let fall no remarks, and to put no questions, which assume the prisoner's guilt.... When a witness is examined by the court, the questions put by the court should follow the rules as to form observed on criminal trials. The judicial power to examine a witness should be carefully exercised so as not to prejudice the accused, and questions by the court which assume the prisoner's guilt, or which assume the witnesses are testifying falsely, or which give to the jury the impression that the court has determined that the accused is guilty, furnish a basis for reversal."
Likewise, in Johnston v. City of Birmingham, Ala.Cr.App., 338 So.2d 7 (1976), this court, citing Holmes, supra, reiterated that a trial judge should not ask any question which assumes the guilt of the accused. We then went on to say:
"However, a trial judge is more than a mere moderator. It is his duty to conduct an orderly trial and to make certain as far as possible that there is no misunderstanding of the testimony of the witnesses. He may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he does not depart from a standard of fairness and impartiality...."
In my opinion the appellant's answers to the trial court's questions in the instant case were devastating to the appellant only because they elicited the truth from him and thus negated self-defense. The trial court's questions were phrased to elicit facts and did not assume the accused's guilt nor express the trial court's opinion as to the guilt or innocence of the appellant. The fact that the truth is devastating to a defendant is no ground for excluding the question which elicits that truthful answer. I do not think that the trial court in the instant case transgressed the bounds of judicial propriety in propounding the questions set out in the majority opinion hereinabove. I therefore respectfully dissent.