TYSON, Judge.
Andrew Louis Wilson was indicted for sale of marijuana in violation of § 20-2-70, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment” and he was sentenced to 15 years’ imprisonment in the penitentiary.
Jammy Thomas, an officer with the Alabama Bureau of Investigation assigned to the narcotics unit, testified he was involved in the undercover investigation of drug sales in the Opelika area in February of 1984. He stated he worked as an undercover officer along with a confidential informant on approximately ten cases during this time period. Detective Robert Brock, of the Opelika Police Department, was his supervisor in the undercover operation and Brock showed him several photographs of known drug dealers in the area, including a photograph of the appellant.
At approximately 4:55 p.m. on the night of February 25, 1984, Thomas stated that he and a confidential informant named Yang drove to the corner of Hardaway Avenue and Toomer Street in Opelika. Once they arrived at the corner, Yang told Thomas to pull over to the curb. There were approximately four or five black males standing on the corner approximately 20 yards from their car. Yang pointed out the appellant as being the guy wearing a gray sweatshirt and blue jeans. Even though it was getting dark, Thomas stated that he could see the appellant’s features.
At some point, a male named Erskin White received a manilla envelope from the appellant and brought it to Thomas. Thomas took the envelope and gave White $20.00. White then took the $20.00 to the appellant and White brought $15.00 back to Thomas. Thomas then took the manilla envelope to Detective Brock.
Erskin White testified that he had known the appellant, his brother Edward Wilson, and Yang all of his life. He stated Yang’s real name is Darryle Collier.
White stated that he has been with the appellant on the corner of Hardaway and Toomer on occasions, but claimed he was not there on the night of February 25, 1984. He denied being involved in the events of the night in question and stated he had never seen Thomas until that day in court. He testified that he was not afraid of the appellant or his brother. White admitted that he had been involuntarily committed to the Veterans Administration Hospital in Tuskegee because he was mentally ill.
Darryle Collier stated in court that his nickname is Yang and that he had known the appellant and his brother for many years. He denied being a confidential informant for the Opelika Police Department, *920 but stated he knew Thomas because he was with him on the night of February 25,1984.
Collier testified that on that night he and Thomas went to the corner of Hardaway and Toomer. When they arrived, he saw a group of about 14 black males standing in a group. He denied pointing out the appellant to Thomas and stated he was not sure if the appellant was there that night but that he might have been. Collier testified that he remembered White coming up to the car but he did not see anything passed between White and Thomas.
At this point, Collier was asked if he was scared of the appellant. He stated that he was not afraid of the appellant or anybody else. Collier did say that, since his name had come up in connection with the undercover operation, he and his family had received threats and he had been attacked by a group of people.
Detective Brock testified that he showed Thomas a photograph of the appellant in connection with the undercover drug investigation being conducted in Opelika. Brock stated that Collier was a confidential informant for the Opelika Police Department and he had worked on about five cases, several of those with Thomas. Brock sent Thomas and Collier out on the night of February 24, 1984 to Toomer and Harda-way to purchase drugs. When Thomas and Collier returned, they told him White and the appellant had sold them marijuana. Thomas gave Brock a manilla envelope which Brock in turn gave to Taylor Noggle with the Department of Forensic Sciences. Noggle testified that the subject matter contained in the manilla envelope was marijuana. At this time, the State rested.
The sole witness for the defense was the appellant. The appellant stated that he was not present on the night of February 25,1984 when the alleged sale of marijuana took place and he was not in any way involved. He further testified that he had never sold marijuana and had never seen Thomas until the time he testified in court.
I
Following the conclusion of the State’s and defense counsel’s examinations of State’s witness, Collier, in which he explicitly denied being afraid of the appellant, the following dialogue took place.
“THE COURT: Are you telling me that you are not scared?
“THE WITNESS: I’m not scared for me, Mr. Wright. This is really affecting my mother more than it’s affecting me, you know. As far as I'm concerned, you know, I’m going to take care of myself whether ya’ll have to put me back in prison, or put me in jail, or imprison me, you know, I’m going to protect me the best way I know how. I don’t go around pickin’ on peoples, you know. I mind my business, I work hard every day. I take care of my kids, and I go home and rest. I don’t mess with nobody, and I pray to God that nobody messes with me. I got God on my side.
“THE COURT: You were scared two weeks ago, weren’t you?
“THE WITNESS: Yes, sir.
“THE COURT: When you talked to me?
“THE WITNESS: When I first heard it in the papers, you know I had to be.
“THE COURT: That’s all.” (R. 52-53).
The appellant contends that the trial judge’s questioning of Collier was improper and prejudicial to the appellant and, therefore, a reversal is mandated.
The State asserts that since trial counsel failed to make a timely objection to the trial judge’s questions, nothing is preserved for our review. However, the following rule of law should be considered:
“The ineradicable error rule in this jurisdiction provides an exception to the general rule that improper argument of counsel is not a ground for a new trial or even the subject for review upon appeal unless there has been a timely objection by counsel or a motion to exclude, a ruling thereon by the Court, or a refusal of the Court to make a ruling. Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958); Washington v. State, 259 Ala. 104, 65 So.2d 704 (1953); Anderson v. State, 209 Ala. 36, 95 So. 171 (1922).
*921 “This Court in Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958), stated the ineradicable error rule in the following manner:
‘An exception to this general rule, requiring appropriate objection or action invoking corrective instruction or action by the trial court, is where the remark or argument of counsel (or court) is so grossly improper and highly prejudicial to the opposing party as that neither retraction nor rebuke by the trial court would have destroyed its sinister influence. Anderson v. State, 209 Ala. 36, 95 So. 171. Id., 267 Ala. at 221, 100 So.2d at 753.”
Christian v. State, 351 So.2d 623, 626 (Ala.1977). (Emphasis added).
Thus, when a trial judge propounds questions to a witness which are improper and extremely prejudicial to the accused, an objection is not necessary if instructions by the trial court could not erase the prejudicial impact of his questions from the jury’s mind. This is such a case in which the trial judge could not have given any instructions which Would eradicate the improper implications of his questions.
“In Sprinkle v. State, Ala.Cr.App., 368 So.2d 554, this court held:
‘The trial judge is more than a mere moderator and it is his duty to conduct an orderly trial and to make certain as far as possible that there is no misunderstanding of the testimony of witnesses. Thus he may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he did not depart from a standard of fairness and impartiality.’ ”
Richardson v. State, 403 So.2d 293, 295 (Ala.Crim.App.) affirmed, 403 So.2d 297 (Ala.1981).
In the case at bar, the trial judge’s questions were unnecessary to clarify the testimony of Collier. Collier had repeatedly stated he was not afraid of the appellant or his brothers. He never waivered from this point.
Furthermore, the questions asked by the trial judge were not ones which would have been proper for the State to ask. A somewhat similar fact situation to the one at bar can be found in Holmes v. State, 22 Ala.App. 373, 115 So. 849 (1928). In that case, the defendant was charged with the illegal sale of liquor and his conviction rested solely on the testimony of one witness.
“When first placed upon the stand, this witness testified:
‘He [defendant] did not sell me a bit of liquor that night.’
“The court thereupon propounded the following question to the witness:
‘Did you get any whisky that night — the night of the fiddlers’ contest? A. I don’t remember whether I did or not.
‘The Court: You don’t remember? A. No, sir.
‘The Court: You have been before the grand jury? A. Yes, sir.
‘The Court: Did you state before the— how old are you, young man? The witness answered, that he is 19 years old.
‘The Court: Do you know what an oath is?’ To which the witness replied, that he does.
‘The Court: Do you know, when you were taking an oath, you were to tell the truth?’ To which the witness replied that he does.
‘The court thereupon propounded the following question: ‘You know, where a man perjures himself, it is one of the worst crimes?’ The witness answered that he does.
‘The Court: You were sworn to tell the truth, understand that?’ The witness replied that he did.
‘The Court: Now, when he (indicating the solicitor) asks you a question, you answer the question, and answer truthfully.’
“Objections were interposed and exceptions reserved, and to this last question or admonition by the court the defendant objected to the instructions of the court and to the questions relative to the witness understanding what perjury is. The court replied, ‘yes,’ to which the defendant reserved an exception. The court thereupon inquired of the witness if he *922 got any whisky that night, to which the witness replied that he thought he drank a little whisky, but he did not remember who gave it to him. The solicitor then asked him: ‘Did you tell me in that room (indicating) when you went out there Roy (defendant) brought you a bottle of whis-ky?’ Witness replied he thought so. Whereupon the court stated to witness: ‘Why don’t you tell it?’ and said, T didn’t mean to say so much to you a while ago, but you must tell 'the truth while you are on the stand.’ After the above occurrences, which are copied from the record, the witness finally stated that ‘Roy Holmes delivered to him a bottle of whis-ky, but that he didn’t know the size of the bottle.’ ”
Holmes, supra, 115 So. at 849-850.
In Holmes, supra, the court reasoned that although “the [trial] court felt impelled to resort to drastic measures in order that justice might not be perverted,” he had prejudiced the substantial rights of the defendant and denied him a fair and impartial trial. Holmes, supra, 115 So. at 850. The court went on to say that while “a party may ask his own witness whether he has not previously made statements inconsistent” with his testimony, “there is no rule of evidence which allows a party [or the court] to impeach his own witness; nor is there any rule of evidence which allows the introduction in evidence of a conversation had between the solicitor [or court] and a State witness in the absence, and not in the hearing of the defendant.” Holmes, supra, 115 So. at 850.
In the instant case, the implication of the trial judge’s questions was that Collier was not telling the truth on the stand and had told the trial judge a different story two weeks earlier in a private conversation.
“The weight to be given to evidence is wholly within the province of the jury, and any invasion of this province by the court in its orders is error; and any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, unless it be clearly shown that such remarks have been explained and excluded from them.”
Griffin v. State, 90 Ala. 596, 8 So. 670, 673 (1890); Richardson, supra, at 295.
In this case, it was not the trial judge’s place to discredit Collier’s testimony. His questions of Collier introduced facts which were not in evidence and, thereby, he invaded the province of the jury as to the weight of the evidence. The trial judge’s improper questions were a severe departure from the fair and impartial standard to which all judges are held and certainly prejudiced the substantial rights of this appellant.
The able trial judge in this cause has a long record of distinguished legal service. His questioning here, however, went beyond the bounds of fair play.
Therefore, this case is due to be reversed and remanded for a new trial.
In light of our reversal in this case, we pretermit a discussion of the second issue raised by the appellant since it is unlikely it will reoccur in retrial of this case.
REVERSED AND REMANDED.
All the Judges concur.