502 So.2d 882 (1987)
Donald Eugene MOORE
v.
STATE.
5 Div. 152.
Court of Criminal Appeals of Alabama.
February 10, 1987.
William P. Fuller, Jr., Lafayette, for appellant.
Charles A. Graddick, Atty. Gen., and Rivard Melson, Asst. Atty. Gen., for appellee.
BOWEN, Presiding Judge.
In a two-count indictment, Donald Eugene Moore was convicted for the unlawful possession of marijuana and the unlawful possession of hydrocodone, codeine, and butalbital. He was sentenced to twenty-five years' imprisonment as a habitual offender. On appeal, Moore contends that the trial judge's examination of a defense witness substantially prejudiced his right to a fair trial and invaded the province of the jury on the credibility of the witness and the weight of her testimony.
An issue at trial was the defendant's knowledge of the presence of the drugs found in the "trailer that has been sort of modified into a house." The State presented testimony that this house was the defendant's residence and that he lived there with his girlfriend, Julie Meghan.
The first defense witness was Joyce Moore, the defendant's mother. She testified that the defendant only "stayed" in the trailer "part of the time," that it was not under his exclusive control, and that other people used the trailer for storage. She stated that a number of people had access to the trailer, and that there were keys to that building which were not accounted for.
We can only characterize the prosecutor's cross-examination of Mrs. Moore as *883 brief, incomplete, and perfunctory. After the prosecutor stated "nothing further," the trial judge examined Mrs. Moore:
"THE COURT: When was the last time you looked for it [marijuana]?
"THE WITNESS: When I went up there, sir, I went up to get what would be loaned to me.
"THE COURT: Okay. Whose is that thing right there?
"THE WITNESS: I have no idea. I've never saw that.
"THE COURT: If a thing like that were found in that house, do you think you would have seen it if it had been
"THE WITNESS: I believe I would as tall as that is, yes, sir.
"THE COURT: Okay. Now, whose marijuana was that in your house?
"THE WITNESS: I have no idea. I don't.
"THE COURT: You don't have any idea. Well, who stayed there more than anybody else?
"THE WITNESS: They all three stayed up there part time, and Cindy was over there quite a bit.
"THE COURT: Now, Ms. Moore, isn't it true that you know that your son stayed there more than anybody else, don't you?
"THE WITNESS: He stayed there part-time, yes, sir.
"THE COURT: And it was your place, wasn't it?
"THE WITNESS: Yes, sir.
"THE COURT: And he's your son?
"THE WITNESS: Yes, sir.
"THE COURT: And, if it weren't for his contact with it, there wouldn't be anybody staying there? You didn't invite those girls to stay over there, did you?
"THE WITNESS: No, sir. I did not.
"THE COURT: Were they staying over there for your benefit in some way?
"THE WITNESS: No, sir.
"THE COURT: They weren't your friends, were they?
"THE WITNESS: Julie was.
"THE COURT: Well, how did they happen to be in the place? Was it because you invited them there?
"THE WITNESS: No, sir, but they also came to my house.
"THE COURT: Wonder who invited them there. Do you have any idea who invited them there?
"THE WITNESS: Well, sir, if you would allow me to say, she called
"THE COURT: I will allow you to answer my question, Ms. Moore.
"THE WITNESS: She called constantly over to the house.
"THE COURT: No, ma'am. That's not answering my question. And I'm telling you to answer my question right now. Who had access to the building? Your son did, didn't he?
"THE WITNESS: At times, yes, sir.
"THE COURT: And that's because you let him have access, didn't you?
"THE WITNESS: Yes, sir.
"THE COURT: And you didn't let any of those other people, did you?
"THE WITNESS: I let Julie.
"THE COURT: All right. You let Julie have access to it?
"THE WITNESS: Yes.
"THE COURT: Is it Julie's marijuana?
"THE WITNESS: Not that I know of.
"THE COURT: Have you asked her?
"THE WITNESS: I did not know there was any marijuana up there.
"THE COURT: Have you asked her if it was her marijuana?
"THE WITNESS: I've asked her, and she told me it wasn't.
"THE COURT: And so you believe her, don't you?
"THE WITNESS: Yes, sir, I believe her until I find out different, then she'll be gone. Because I don't believe in it.
"THE COURT: Okay. Now, your son was up there, wasn't he?

*884 "THE WITNESS: Yes, sir.
"THE COURT: All right. And if anybody else was there, it's because he let them there, wasn't it?
"THE WITNESS: I would assume so, yes, sir.
"THE COURT: Were there other members of your family that had access to it?
"THE WITNESS: Yes, sir.
"THE COURT: Any of them involved in drugs so that they would have that stuff up there?
"THE WITNESS: No, sir. No, sir, that I know.
"THE COURT: There is not any likelihood that any of themthey didn't stay there on a regular basis, did they?
"THE WITNESS: No, sir.
"MR. FULLER [Defense Counsel]: Judge, we would respectfully object to this line questioning.
"THE COURT: Okay. You have your objection, and it's overruled.
"What was the last time you were in there before this search?
"THE WITNESS: It had been about four or five days, sir. I had company from Ohio, and I was pretty well busy tied up at my house.
"THE COURT: All right. What was the occasion for you being up there the last
"THE WITNESS: I went to get something out of the back purple bedroom we call it which is at the back end of the trailer.
"THE COURT: Did you have occasion to go in the front bedroom?
"THE WITNESS: No, sir. I did not go in the front bedroom.
"THE COURT: How long has it been since you had been in the front bedroom?
"THE WITNESS: It had been a couple of weeks I would say.
"THE COURT: What did you do when you went in the front bedroom?
"THE WITNESS: I walked through there to the other room.
"THE COURT: Did you ever look under the mattress?
"THE WITNESS: No, sir, I did not.
"THE COURT: When was the last time you had looked under the mattress?
"THE WITNESS: I hadn't looked under no mattresses.
"THE COURT: How is that?
"THE WITNESS: I hadn't looked under no mattresses.
"THE COURT: Not in a long time anyway?
"THE WITNESS: Not since Julie had rented it, no, sir.
"THE COURT: Whose bed was that?
"THE WITNESS: It's our bed. It's my furniture up there.
"THE COURT: It's your furniture up there?
"THE WITNESS: It's my trailer and my furniture, yes, sir.
"THE COURT: How long ago did she rent it?
"THE WITNESS: She rented it inlet's see. We moved out in November, and she rented it in November when we moved into our new double wide.
"THE COURT: Okay. Did Julie come over there frequently before that?
"THE WITNESS: Yes, sir.
"THE COURT: Did Cindy come over there frequently before that?
"THE WITNESS: Not while I lived up there she didn't come over to my house that much, no, sir.
"THE COURT: Okay. So the people who had the most frequent access to the house were your son the defendant, and Julie as far as you know?
"THE WITNESS: Yes, sir. And my childrenother childrenwhen they would store something in there or go to get it out.
"THE COURT: But none of them are involved in marijuana that you know of?
"THE WITNESS: No, sir.

*885 "THE COURT: Have you asked any of them about whether it was theirs or not?
"THE WITNESS: Yes, sir. I knowI wouldn't think so.
"THE COURT: Okay. Any further questions?"
The prosecutor then asked Mrs. Moore five questions on "recross examination." On "redirect examination," defense counsel again established that "a number of people had access to the house" and that "there were unaccounted for keys to the house."
The trial judge's questioning of Mrs. Moore was aggressive and extensive and for these reasons it is subject to criticism. While the trial judge has the right to interrogate witnesses, "the examination of witnesses is the more appropriate function of counsel, and instances should be rare and conditions exceptional which will justify the presiding judge in conducting frequent and extensive examinations." Cook v. State, 36 Ala.App. 449, 451, 57 So.2d 832 (1952). However, the only objection"Judge, we would respectfully object to this line [of] questioning"was made after the trial judge had already asked Mrs. Moore twenty-seven questions. That objection really does not reach the issue raised on appeal. Although there was a motion for a new trial, this issue was not a ground thereof. In his oral instructions, the trial judge charged the jury: "So, if anything that I have said has led you to believe that I have an opinion one way or the other about the case, just discount that and say, well, that's not really his job."
The defendant relies on Wilson v. State, 461 So.2d 918 (Ala.Cr.App.1984), and Richardson v. State, 403 So.2d 293 (Ala.Cr. App.), affirmed, 403 So.2d 297 (Ala.1981). This Court reversed Wilson because the judge's questions were improper because they sought to impeach the witness with a conversation had between the judge and witness. Richardson was reversed because the trial judge cross-examined the defendant immediately after direct examination and before the prosecutor asked a single question. Those cases are distinguishable from the situation here presented.
The accepted rule is that a trial judge "may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he does not depart from a standard of fairness and impartiality." Sprinkle v. State, 368 So.2d 554, 562 (Ala.Cr.App.1978), cert. quashed, 368 So.2d 565 (Ala.1979). "He may ask any question which either the state or the accused had the right to ask, or which it was their duty to ask, but which has been omitted, if the answer may be relevant." Holmes v. State, 22 Ala.App. 373, 115 So. 849 (1928). While "questions by the court which assume the prisoner's guilt, or which assume the witnesses are testifying falsely, or which give to the jury the impression that the court has determined that the accused is guilty, furnish a basis for a reversal," Holmes v. State, 22 Ala.App. 373, 374, 115 So. 849 (1928), the trial judge has a "solemn and sacred duty" to the development and establishment of truth "and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other." Brandes v. State, 17 Ala.App. 390, 391, 85 So. 824 (1920), relying on Beal v. State, 138 Ala. 94, 35 So. 58, 59-60 (1903). See also Richardson v. State, 403 So.2d 297 (Ala.1981); Jones v. State, 292 Ala. 126, 128, 290 So.2d 165 (1974); Rice v. Hill, 278 Ala. 342, 343, 178 So.2d 168 (1965).
"The propriety of judicial examination of witnesses is to be determined by the circumstances of each case, and whether a given question or line of questioning by the trial judge is designed primarily to clarify issues and elicit facts, or is improper in nature and extent, must be decided in the light of the whole trial. While protracted or extended examination by the court is regarded unfavorably, at least where it tends to indicate the judge's bias or opinion, the question *886 of whether the trial court unduly participated in an interrogation of witnesses is not to be determined by the number of questions which the trial court asked, and if all the questions were elicited for purposes recognized as proper on either direct or cross-examination, prejudice does not arise merely because the questions are asked by the court. The judge should not ask a question which is based on the assumption of accused's guilt of the offense charged." 23 C.J.S. Criminal Law § 991 (1961).
While a trial judge "may in a particular case be justified in examining some witnesses at considerable length, in an effort to bring out the true facts for consideration by the jury," 75 Am.Jur.2d Trial § 88 (1974), he should not usurp the functions of counsel by becoming an advocate for either side. Tharp v. Union State Bank, 364 So.2d 335, 337 (Ala.Civ.App.1978). "[J]udicial interrogation of witnesses should not be done in such a manner as to indicate to the jury any bias on the judge's part, generally, or any judicial opinion respecting the credibility of a witness or the truth of the facts, in particular, or as to usurp counsel's role as the presenter of the evidence." Annot., 6 A.L.R.4th 951, 956 (1981).
Although the trial judge certainly did participate to an uncommon degree in questioning Mrs. Moore, we do not find that this is a case where the trial judge's method of presiding amounted to a denial of a fair and impartial trial. The trial judge's conduct does not amount to "a course of judicial domination of the examination of [the witness] so persistent throughout the trial that the result was an effective preemption of counsel's legitimate function in the adversarial process.... without any arguably justifying increase in the clarity of the evidence being elicited by counsel or in the expedition with which it was being elicited." Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 926 (4th Cir.1984).
While the trial judge's interrogation of Mrs. Moore is subject to criticism, we do not consider it cause for reversal.
"As a general rule a trial Judge, in order to maintain that impartiality which proper trial technique demands, should be careful not only as to the number and type of questions propounded by him to witnesses but also as to the manner in which they are propounded. The interrogation of witnesses by the trial Judge is by no means prohibited but oftentimes it is necessary to the administration of justice in developing the truth and in aiding the jury to understand the situation. The extent to which this may appropriately and reasonably be done is a matter which must rest largely in the sound and unabused discretion of the trial Judge. It is noted in the present case that the trial Judge asked a number of questions, but we are unable to say from the cold print that they, either singly or collectively, were such as to create any prejudice against the Defendant. Most of them seem quite innocuous and none seems to require the baneful imputation placed upon them by Defendant." Texas Pacific-Missouri Pacific Terminal R. v. Welsh, 179 F.2d 880, 881-82 (5th Cir. 1950).
Finding no clear abuse in the exercise of the trial judge's discretion by the manner in which he examined the defense witness, we affirm the judgment of the circuit court.
AFFIRMED.
TYSON, PATTERSON and McMILLAN, JJ., concur.
TAYLOR, J., concurs specially with opinion.
TAYLOR, Judge, concurring.
I concur because of the failure of defense counsel to take the necessary steps to preserve the issue of the court's becoming an advocate.