TYSON, Judge.
J.M. Poores was charged by indictment with unlawfully selling, furnishing or giving away 6.4 grams of marijuana, a controlled substance, to one Steve Bradford on to-wit, March 13, 1986, contrary to the provisions of § 20-2-70, Code of Alabama 1975 as amended.
At arraignment the appellant entered a not guilty plea.
Thereafter, the appellant appeared before the trial court and, after a full explanation of his constitutional rights in accordance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and, also, full explanation of range of punishment as is required by Carter v. State, 291 Ala. 83, 277 So.2d 896 (1973), the appellant withdrew his not guilty plea and entered a plea of guilty. At this proceeding the appellant admitted that he had the prohibited marijuana in his possession. The trial court had previously advised him, and the appellant indicated, that this was a fully voluntary plea and that there had been no inducement whatever for obtaining this plea. There was a statement, however, from the district attorney that the *351 district attorney would make a recommendation.
The trial court then continued the cause for a sentencing hearing at which a recommendation was to be made by the district attorney. The trial court explained, however, at the time of taking the plea, that such recommendation would not be binding on the court. The appellant indicated that he understood this.
The appellant was represented by experienced and competent counsel throughout.
At the sentencing hearing the appellant requested probation, indicating that, other than one minor infraction of the law as a much younger man, he had been gainfully employed and was married and supported a wife and two children. The appellant requested probation. However, the appellant was sentenced to three years’ imprisonment in the penitentiary by the trial judge.
Thereafter, a hearing was conducted on a motion for new trial. At this hearing there was considerable discussion about whether or not the appellant had cooperated with the sheriffs department in return for obtaining information on others who were engaged in the unlawful sale of drugs.
The appellant’s testimony at this hearing is as follows:
“DIRECT EXAMINATION
“BY MR. GRAHAM:
“Q. What is your name, please?
“A. James Marshall Poores.
“Q. And you’re the defendant in this case?
“A. Yes, sir.
“Q. Now, Mr. Poores, this is on a motion for a new trial. As I have explained to you before we came in the courtroom here today, ground number 2 for the motion for a new trial, without going into all the details of the allegations, generally that before you entered a plea of guilty in this case, that you had dealt some with the sheriff’s deputies, and you and I have talked generally with the district attorney in regard to you entering a plea of guilty with the understanding on your part, and you thought on the part of the sheriff’s deputies and the district attorney that for your cooperating with them on certain aspects of investigations going on in this county, that they would either speak up in your behalf on your plea of guilty or make some recommendations in favor of some lighter treatment or some better consideration by the Court because of that cooperation, is that right?
“A. Yes, sir.
“Q. Well, now, Mr. Nix, the deputy was the person that you particularly talked to, and y’all talked some time between the 2 of you, right?
“A. Yes.
“Q. Then you talked sometimes in the presence of me and Mr. McDowell, the district attorney, and Nix, is that right?
“A. Yes, sir.
“Q. Did you make, in good faith on your part, an effort to cooperate and to try to do some things that the sheriff's department asked you to do?
“A. Yes, sir.
“Q. And were you always successful, or were you, in your judgment, partially successful or completely a failure in being able to get things, and to do things that he was asking you to do? How would you characterize it?
“A. Well, on part of it I done good, and on some other thing I didn’t do good. They just wouldn’t let me. I mean, what I was trying to do was, you know, do it, and it didn’t work out, because they either didn’t have it, or wouldn’t sell it to me.
“Q. Did you keep in touch with the deputy sheriff during this process?
“A. The first time I called him, well, I didn’t call him as much as I should have, but the last time when I come back from my sentencing, be 2 weeks, I did. I called him most of the time twice a day.
“Q. What you’re saying, so the record will make a little sense, you had first been allowed or least were granted by the Court a period of time before sentence was to come down on you, before sentence day, and that’s what you called the first time. But when we came back *352 for sentence, you and I asked the sheriff, and also, I guess, the district attorney for further time to try to do what you were saying that you were trying to get done, is that right?
“A. Right.
“Q. Now, from that time until the final sentence day, what was it, a couple of weeks?
“A. Yeah.
“Q. During that last couple of weeks you’re saying that you kept in constant touch with them and cooperated fully insofar as trying to be in touch with them and do what he was asking you to do, or at least try to do some things that he was asking you to do, is that right?
“A. Yes, sir. I even made a couple of buys and brought to him, but they wasn’t no good, you know. He was selling, but he just didn’t sell me.
“Q. Well, what you’re saying. I don’t particularly care to go into the various details, because I don’t know that it would be good for anybody, or serve any purpose, but you’re saying that you did in spirit, at least, and in your effort you did in good faith what you promised to do, and your testimony is here today that the sheriff did not respond, or the deputy did not respond in trying to get the Court to know that you did make a good faith effort? As a matter of fact, it appeared to me that Mr. Nix or the sheriff’s department sort of turned against you. They thought that you were trying to use them, is that right?
“A. Right.
“Q. And you’re saying to this court that’s not true?
“A. No, sir.
“Q. And you’re thinking because of that situation that developed that you were prejudiced in this whole process, and you’re asking the judge to set aside the judgment, is that what you’re doing?
“A. Yes, sir.
“Q. Now, I tried to put this down in my motion for a new trial. Basically on the basis of what you’ve told me, not on what I thought or what I’m just arguing, but that has been generally what you’ve related to me all the way through insofar as this motion is concerned, is that correct?
“A. Yes, sir.
“MR. GRAHAM: Well, you answer Mr. McDowell’s questions, if you have any.” (R. 50-54)
In view of the above, this court is of the opinion that it is not clear from the record whether or not there was a further inducement on the part of the State, either through the sheriffs department or through the district attorney’s office for Franklin County, Alabama, which may have induced this appellant to enter his plea.
Because of this discrepancy in the record itself, we are of the view that a further hearing should be held by the circuit court to determine if there was such an understanding and if, in fact, such did induce this appellant’s plea of guilty. See Chappell v. State, 502 So.2d 882 (Ala.Crim.App.1986) and authorities therein cited.
The attorney general in brief has moved this court to remand this cause for a further hearing. We are in accord.
This cause is, hereby, remanded to the circuit court for an additional hearing as herein outlined.
REMANDED WITH DIRECTIONS FOR FURTHER HEARING.
All the Judges concur.