TYSON, Judge.
Billy Ray Weaver was indicted for arson in the second degree in violation of § 13A-7-42, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment”. The appellant was sentenced to life imprisonment in the state penitentiary.
The appellant does not challenge the sufficiency of the evidence. Thus, the facts will be briefly stated.
*166 On February 9, 1987, the house rented by the appellant’s family caught fire and burned. Around 8:00 p.m. that same night Peggy Parks and her niece went to the appellant’s house. When Parks knocked on the door, she could see smoke in the kitchen. At this point the appellant came out of the house along with a man identified as Peanut. Peanut told Parks that the appellant was drunk and he thought the appellant was going to burn down the house. Peanut then asked Parks to give him a ride.
A1 Cosper, arson investigator for the State of Alabama, testified that the fire was man-made and, in his opinion, was set intentionally.
I
The appellant asserts that the trial judge abused his discretion by questioning one of the State’s witnesses.
“The propriety of judicial examination of witnesses is to be determined by the circumstances of each case, and whether a given question or line of questioning by the trial judge is designed primarily to clarify issues and elicit facts, or is improper in nature and extent, must be decided in the light of the whole trial.”
Moore v. State, 502 So.2d 882, 885 (Ala.Crim.App.1987).
During the direct examination by the prosecutor of Peggy Parks, the following occurred:
“Q. And you said that ya’ll turned and you were walking away and then what happened?
“A. Peanut come running out of the house and asked us would we take him away from there, that....
“MR. LAIRD: Objection. Hearsay.
“THE COURT: Overrule.
“Q. You may answer.
“THE COURT: I believe you have already testified — didn’t you testify that there was smoke there then?
“A. Yes, sir.
“THE COURT: In the rooms?
“A. It looked like the kitchen — they had been cooking in the kitchen....
“THE COURT: Coming from the other rooms ahead of you?
“A. ... cooking something and I figured they had left something on the stove.
“THE COURT: It was at that time that Peanut you call him, said something?
“A. No, sir, we was out in the yard and Peanut come outside.
“THE COURT: All right. Okay. I overrule you. Res Gestae.
“Q. All right. You can answer. Okay. You said that Peanut came running out. All right. How did he appear when he came running out of the house?
“A. Scared. Excited or — I don’t know. Nervous or something.
“Q. Did he come down the steps or what?
“A. No, ma’am, he come off the side of the porch. He didn’t walk down the steps.
“Q. And then what did he say to you?
“A. He wanted us to take him away from there. That Billy Ray was drunk and all and he thought he was going to burn the house....
“MR. LAIRD: Objection. Hearsay.
“THE COURT: Overrule, now. Let me understand her. Can you hear her, ladies and gentlemen? Ya’ll can hear her better than I can. He said what?
“A. He said he wanted us to take him away from there. That Billy Ray was drunk and he thought he was going to burn the house and he didn’t want to be involved in it.
“THE COURT: Thought he was going to burn the house and he didn’t want to be involved in it. And the smoke had already boiled out of there, then?
“A. No, sir. It was in the — it looked like it was coming from the kitchen, like they had....
“THE COURT: But you had just come out of the house?
“A. No, sir, we didn’t go in the house.
“THE COURT: But you saw or smelled the smoke?
“A. Yes, sir.
“THE COURT: All right.
*167 “A. You can see straight through to the kitchen from....
“THE COURT: Oh, I see.
“A. ... from the right side of the house.
“THE COURT: All right. I overrule. Res Gestae.” (R. 25-28).
Clearly, the trial judge in this instance was trying to clarify the facts in this cause to determine whether vel non the testimony should be allowed into evidence as an exception to the hearsay rule. Thus, in light of this situation, the trial judge did not abuse his discretion in questioning the State’s witness.
II
The appellant contends that the trial judge committed error by failing to individually poll the jury.
An accused’s counsel must request that the trial judge individually poll the jury prior to their dismissal or this right is deemed waived. Travis v. State, 397 So.2d 256 (Ala.Crim.App.), cert. denied, 397 So.2d 265 (Ala.1981).
After their deliberations, the jury returned with its verdict. Before reading the verdict, the judge asked the jury collectively if this were the verdict of all of the jury, “[a]t which time, each juror replied that it was his or her verdict.” (R. 229). From this statement in the record, we cannot determine whether this means each of the jurors answered individually. For the sake of our discussion, we will view this as meaning the jury was not individually polled.
After the trial, the judge read the guilty verdict and the jurors were excused. During this entire proceeding, defense counsel never requested that an individual polling of the jury be conducted and did not object when the trial judge asked the jury collectively if this were the verdict of all the jury members.
Therefore, the appellant waived his right to have the jury individually polled by his silence. Thus, this issue has no merit.
Ill
Leland Odum testified that on the night in question the appellant was at Odum’s house playing dominoes. While on the stand, Odum stated that he did not drink alcoholic beverages. After Odum testified, Gilbert Weaver, the appellant’s brother, testified for the defense. Weaver testified that, on the night of the fire, he took the appellant over to Odum’s house around 6:15 p.m. During the cross-examination, the prosecutor asked Weaver whether Odum’s general reputation in the community was good or bad. Weaver responded that Odum is “a fine man.” (R. 199).
The prosecutor then asked, “Have you never heard that he has been arrested for intoxication ... for numerous times for public intoxication, disorderly conduct, resisting arrest.” (R. 199).
The appellant maintains that the State should not have been allowed to impeach Weaver’s testimony as to Odum’s good general reputation when the State brought up the issue of Odum’s general reputation.
“If a witness testifies to another’s good general reputation as a whole for the purpose of supporting such other’s credibility, the witness may be asked on cross-examination whether he has heard rumors derogatory of such other.” C. Gamble, McElroy’s Alabama Evidence, § 176.01(10) (3d ed.1977) (footnote omitted).
In light of the above, the State certainly should have been allowed to impeach Weaver’s testimony concerning Odum’s good general reputation in the community. Even though the State was the party who raised this issue of Odum’s general reputation on cross-examination, such was proper.
Accordingly, we find there is no merit to this issue.
For the reasons herein stated, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, P.J., concurs in result only with opinion.