PER CURIAM.
Jack Stroud, the appellant, was indicted for theft in the third degree and for robbery in the third degree. The jury found the appellant guilty of both offenses. He was sentenced to 12 months’ imprisonment for the third degree theft conviction and 15 years’ imprisonment for the third degree robbery conviction.
*654 On April 19, 1990, Joe Smith, foreman of the Macon County shop, reported to Deputy Sheriff Eddie Macon that some gasoline was missing from the shop. The next morning, Macon saw a car parked on County Road 34 near a trail through the woods leading to the county shop. As Macon was walking down the trail toward the shop, he saw two men with five-gallon cans walking up the trail. Macon waited in the bushes until the men approached him and then he jumped out of the bushes with his gun and told the men to lie on the ground. One of the men, identified as Ronnie Robinson, fled. The other man, who was identified as the appellant, struggled with Macon and eventually took Macon’s gun from him and fled. The appellant’s sister returned Macon’s gun to him, and the appellant surrendered several days later.
Defense counsel has filed a brief, citing Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In his brief, defense counsel alleges that the only possible issue to be raised on appeal is whether the trial court improperly questioned the appellant during the course of the trial. The pertinent portion of the record is quoted below:
“A. Um-um (negative response). When I got down there, I got out and started walking. I said, how far it is?
“Q. Well, let me — let me—
“THE COURT: Got down where?
“THE WITNESS: Oh, it was dirt road down there.
“THE COURT: How far did you get down before you turned around and started coming back?
“THE WITNESS: I would say about— about a hundred feet.
[[Image here]]
“Q. Well, were you walking toward your car?
“A. When? I just told you out there where the gas was.
“THE COURT: Was there a filling station out there?
“THE WITNESS: No, sir.
“THE COURT: Did you ask him what the gas was doing out there in the woods?
“THE WITNESS: Well, I needed some gas, and he told me he had four cans of gas. He said if I would take him out there to get them he would give me two and keep two.
“THE COURT: When did you first tell this person that confronted y’all in the woods, ‘What about him?’
“THE WITNESS: What you say, now?
“THE COURT: You testified earlier that you said, referring apparently to Robinson, you told Macon, ‘What about him?’ When did you say that? Was that before or after y’all scuffled?
“THE WITNESS: Oh, it was before.
“THE COURT: What did you mean when you said that?
“THE WITNESS: Because he had the gun on me and stuff and wasn’t even worried — wasn’t even looking at— wasn’t even telling him nothing and, you know.
“THE COURT: He was telling you to lay down, wasn’t he? To get down on the ground?
“THE WITNESS: No, sir. I started backing up because I seen him with the gun on me. He said, ‘Hold it.’
“THE COURT: He didn’t tell y’all to lay down?
“THE WITNESS: He told me to lay down. He said, get on — He didn’t say lay down. He said, ‘Get on the ground.’
“THE COURT: And you said? What did you say?
“THE WITNESS: I said, ‘What about that guy there?’
“THE COURT: Well, have you — what gives you the idea that somebody other than a lawman is going to treat everybody equally and fairly out there in the woods somewhere? Why did you get into that?
“THE WITNESS: What I’m saying, I didn’t know who he was. He had on blue jean pants and a shirt.
“THE COURT: But you just assumed that he would be just as concerned about putting Robinson on the ground as he would you?
*655 “THE WITNESS: Well, I don’t know. I thought maybe they was trying to crop something up. I didn’t know what was going on, because he had the gun on me looking at me, and Ronnie right there just about beside him and stuff.
“THE COURT: Did you know at that time that Mr. Macon was a law enforcement officer?
“THE WITNESS: No, sir.
“THE COURT: Is that the reason that you said you ought to be treating both of us alike?
“THE WITNESS: Yes, sir, because I didn’t know what was going on.
“THE COURT: Okay.
“(Bench conference held outside the hearing of the jury.)
“MR. DAVIS: Your Honor, may it please the Court. I’m going to object to that whole of line of questioning that Your Honor just made. Just put it in the record.
“THE COURT: Okay. The objection comes too late.” (R. 81-85.)
“The accepted rule is that a trial judge ‘may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he does not depart from a standard of fairness and impartiality.’ Sprinkle v. State, 368 So.2d 554, 562 (Ala.Cr.App.1978), cert, quashed, 368 So.2d 565 (Ala.1979). ‘He may ask any question which either the state or the accused had the right to ask, or which it was their duty to ask, but which has been omitted, if the answer may be relevant.’ Holmes v. State, 22 Ala.App. 373, 115 So. 849 (1928). While ‘questions by the court which assume the prisoner’s guilt, or which assume the witnesses are testifying falsely, or which give the jury the impression that the court has determined that the accused is guilty, furnish a basis for a reversal,’ Holmes v. State, 22 Ala.App. 373, 374, 115 So. 849 (1928), the trial judge has a ‘solemn and sacred duty’ to the development and establishment of the truth ‘and in this connection it is always permissible for the court, and if it appears necessary for him to do so, it is his duty, to propound to witnesses such questions as [are] deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other.’ Brandes v. State, 17 Ala.App. 390, 391, 85 So. 824 (1920), relying on Beal v. State, 138 Ala. 94, 35 So. 58, 59-60 (1903). See also Richardson v. State, 403 So.2d 297 (1981); Jones v. State, 292 Ala. 126, 128, 290 So.2d 165 (1974); Rice v. Hill, 278 Ala. 342, 343, 178 So.2d 168 (1965).”
Moore v. State, 502 So.2d 882 (Ala.Crim.App.1987). See also McNeely v. State, 524 So.2d 375 (Ala.Crim.App.1986), C. Gamble, McElroy’s Alabama Evidence § 121.04 (4th ed. 1991).
Here, the trial court’s questions did not assume the appellant’s guilt or that he was testifying falsely, and the questions did not suggest that the trial court had determined that the appellant was guilty of this offense. The trial court’s questions merely clarified the appellant’s testimony and were not improper.
We must note that the state, in its brief, argues that this issue was not preserved for review because the appellant failed to make a timely objection. This argument is without merit. In Richardson v. State, 403 So.2d 293 (Ala.Crim.App.1981), aff'd, 403 So.2d 297, defense counsel did not object to the trial court’s questioning of the defendant until after the court had finished, just as in this case. In Richardson, we reviewed the court’s questions to the defendant and we found them to be improper.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only.