The appellant was convicted of the unlawful distribution of controlled substances, specifically cocaine, in violation of § 13A-12-211, Code of Alabama 1975. He was sentenced to 12 years' imprisonment, which sentence included enhancement pursuant to the provisions of § 13A-12-250 and § 13A-12-270,Code of Alabama 1975. He was further ordered to pay $50 to the Alabama Victims' Compensation Fund.
The appellant argues that the trial court erred by exercising the prosecutor's *Page 697 
last three peremptory challenges on his behalf, at the prosecutor's request. The record indicates the following transpired:
 "On January 15, 1992, the following occurred before the Hon. Braxton L. Kittrell, Jr.:
"(Prospective jurors were sworn.)
"(Voir dire of prospective jury panel.)
 "(The striking of the jury was begun outside the presence of the court reporter, after which, the following occurred:)
 "[PROSECUTOR]: Judge, I don't have grounds for the rest of my strikes where I can articulate reasons. I would turn those last three back to the Court and ask the Court to make them for me.
 "[DEFENSE COUNSEL]: Judge, I don't know what your ruling is going to be, but we will object to the Court getting involved in a lawyer's duty.
 "THE COURT: You don't object to this [sic] strikes, whatever he strikes?
"[DEFENSE COUNSEL]: Sir?
 "[ANOTHER DEFENSE COUNSEL]: Well, he can't go down to Batson and then get there and say, okay, now, my hands are clean. I mean, you know, I think that's what he is — that is what the situation is, now that he has arrived at Batson's doorstep.
 "[PROSECUTOR]: If we are going to argue, there are some potential jurors in the courtroom.
"THE COURT: Step back here.
 "(Off-the-record discussion between the Court and counsel, during which time, the Court struck prospective jurors numbered 19, 21, and 24 (first page).)"
The record indicates that the strikes made by the trial court were not random, because the prospective jurors' numbers were not sequential and there is no indication that the decision to strike these jurors was arrived at in any neutral fashion, but was a subjective decision by the trial court.
 " 'It is the duty of the trial court to make certain that a defendant can, and will, obtain a fair and impartial trial by an unbiased and unprejudiced jury.' Nickerson v. State, 283 Ala. 387, 390, 217 So.2d 536 (1969). The court supervises all trial proceedings so that the rights of neither party shall be prejudiced. Arnett v. State, 225 Ala. 8, 9, 141 So. 699 (1932). 'The trial judge is not present to aide either party in the lawsuit and certainly under no duty to do so. He is the arbiter and moderator, not an advocate.' Tharp v. Union State Bank, 364 So.2d 335, 337
(Ala.Civ.App. 1978). A trial judge has a duty to maintain proper order and decorum in the courtroom. Lockett v. State, 50 Ala. App. 58, 61-62, 276 So.2d 643 (1973). 'It is expected of the trial judge, in the exercise of perfect impartiality, to see that the law is properly administered and justice done both in respect to the State and the accused.' Cook v. State, 36 Ala. App. 449, 452, 57 So.2d 832
(1952)."
White v. State, 546 So.2d 1014, 1027 (Ala.Cr.App. 1989). In his reply brief, the appellant argues:
 "All manner of mischief will result if such a practice by prosecutors is permitted to take place. The exercise by a trial judge of a prosecutor's peremptory strikes will undermine public confidence in the integrity of judicial proceedings. This will be especially true where, as here, a prosecutor confesses in open court that his motives for surrendering his strikes to the court is his inability to exercise racially-neutral strikes. This practice could well result in the spectacle of circuit judges being called upon by defense to give race-neutral reasons for striking black venire-persons."
While the trial court's actions in making strikes on behalf of the prosecutor are highly questionable, the appellant has failed to show that he was prejudiced under Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There is no indication in the record whether the strikes made by the trial court were against blacks or whites, and no argument was made by the appellant including this necessary information, or alleging that the court engaged in purposeful discrimination, in that the strikes were not made for racially neutral reasons. Thus, the appellant has failed to establish a prima facie case of racial discrimination in the peremptory striking process and therefore has failed *Page 698 
to show a violation of Batson v. Kentucky, supra. See Ex parteBranch, 526 So.2d 609 (Ala. 1987).
 II
The appellant argues that the State failed to establish a sufficient chain of custody regarding the cocaine and the packaging in which the cocaine was transferred. The appellant admits that the State established a complete chain of custody as to the persons in possession of the cocaine at every step until the cocaine was analyzed. However, the appellant argues that, because, according to the testimony, the condition of the cocaine changed during the chain of custody, the evidence was not authenticated. Specifically the appellant notes testimony that the cocaine had originally been in "rock" form and subsequent testimony that the cocaine was in powder form. He also argues because one witness testified that he had placed the cocaine in a small brown coin envelope before placing that envelope into a larger envelope and a subsequent witness testified that the cocaine was not in a coin envelope but was loose in the outer envelope, the smaller envelope allegedly "would have actually had to vanish into thin air." Therefore, the appellant argues, the State failed to prove that the cocaine introduced into evidence was the cocaine taken from the appellant.
The record indicates that the State presented sufficient evidence to establish a proper chain of custody of the cocaine. While several of the witnesses' descriptions of the packaging makes it unclear as to whether the brown coin envelope was preserved, there is some testimony that the "little, small, brown manila envelope" described by a subsequent witness was in fact the same coin envelope described by the earlier witness. The appellant also alleges that the cocaine was not properly authenticated because, he says, witnesses' testimony conflicted concerning whether a plastic bag was inside the outer envelope. These matters concerning the packaging of the cocaine were matters for the jury, as factfinder, to evaluate. Matters of the credibility of witnesses and any apparent conflicts in the evidence go to the weight of the evidence and not to the sufficiency. Brown v. State, 588 So.2d 551, 559
(Ala.Cr.App. 1991). See also Carter v. State, 420 So.2d 292, 294
(Ala.Cr.App. 1982).
As to the condition of the cocaine itself, it is undisputed that, in the handling of the cocaine, the rock or lump purchased from the appellant became pulverized. The forensic scientist testified on direct examination that it was common or at least possible for cocaine to break up into smaller pieces over a period of time. On redirect examination, the forensic scientist testified that hydrochloride, the powder cocaine sometimes comes in very hard form, so that it resembles crack cocaine. However, this type of cocaine turns to a powder if it is broken up "or bounced around" over time. Therefore, the fact that the form of the cocaine changed during handling does not affect its authenticity. The State's evidence established "to a 'reasonable probability that the object [was] in the same condition [although a different form] as, and not substantially different from, its condition at the commencement of the chain.' " Ex parte Holton, 590 So.2d 918, 920 (Ala. 1991).
 III
The appellant argues that § 13A-12-250 and § 13A-12-270, Codeof Alabama 1975, are unconstitutional because, he argues, they create new criminal offenses but do not require that the prima facie elements be determined by a jury under the beyond a reasonable doubt standard. These Code sections enhance the punishment for the unlawful sale of controlled substances if that sale occurred within three miles of a school (§13A-12-250) or of a housing project (§ 13A-12-270). The constitutionality of § 13A-12-250, Code of Alabama 1975, has been upheld against claims of overbreadth and vagueness, and claims that it violates the right to equal protection. McCallv. State, 565 So.2d 1163, 1165-66 (Ala.Cr.App. 1990); Hardy v.State, 576 So.2d 685, 685-87 (Ala.Cr.App. 1991). This court has previously held that § 20-2-79 (the predecessor statute to §13A-12-250) need not even be referred to in the indictment in order to be applied to a case involving the sale of illegal narcotics, where requisites of the statute are met, i.e., *Page 699 
the sale took place within the required distance of a school.Harrison v. State, 560 So.2d 1124, 1127-28 (Ala.Cr.App. 1989).
These statutes clearly apply only to sentencing. "The legislature of Alabama 'wanted to lessen the risk that drugs would be readily available to school children. It is surely rational to achieve that goal by increasing penalties for those who sell drugs near schools.' United States v. Agilar,779 F.2d 123, 125 (2d Cir. 1985), cert. denied, 475 U.S. 1068,106 S.Ct. 1385, 89 L.Ed.2d 609 (1986)." Id. at 1128. As these statutes concern only sentencing considerations, they are properly applied by the trial court. Cf. McMillan v. Pennsylvania,477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); Ex parte Hays,518 So.2d 768, 777 (Ala. 1987), cert. denied, 485 U.S. 929,108 S.Ct. 1099, 99 L.Ed.2d 262 (1988). Therefore, the appellant's argument is without merit.
 IV
The appellant argues that the State did not prove that the offense occurred within three miles of a housing project, as required by § 13A-12-270, Code of Alabama 1975, by a preponderance of the evidence. However, the record indicates that the State introduced a map and supporting testimony that the sale occurred within three miles of the Bessemer Housing Project. Cf. Ex parte Johnson, 597 So.2d 1305 (Ala. 1991). There was no evidence presented to the contrary. Therefore, the State met its burden of proof.
 V
The appellant argues that the trial court erred by enhancing his sentence under both §§ 13A-12-250 and 13A-12-270. However, this argument has previously been decided adversely to the appellant. In Burks v. State, 611 So.2d 487 (Ala.Cr.App. 1992), the defendant argued that sentencing him under both §§13A-12-250 and 13A-12-270, violated his rights because, he said, he received double penalty for a single criminal act. This court rejected that claim, stating:
 "In Hardy v. State, 576 So.2d 685
(Ala.Cr.App. 1991), this court stated that, in 'reviewing a sentence which is alleged to be impermissibly multiple, a court must "determin[e] what punishments the Legislative Branch has authorized." ' Quoting Whalen v. United States, 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715
(1980). Interpreting § 13A-12-250, the Hardy court stated that the section was clearly intended to operate as a sentencing enhancement provision: 'Section 13A-12-250 works in concert with §§ 13A-12-211 and 13A-5-6 and effectively imposes only a single punishment for a single offense.' Hardy v. State, 576 So.2d at 687-88.
 "Both § 13A-12-250 and § 13A-12-270 begin with the same language: 'In addition to any penalties heretofore or hereafter provided by law. . . .' This language evidences a clear legislative intent that persons who sell controlled substances within three miles of a school and a housing project shall have their sentences enhanced under both statutes. See also, Hester v. State, 597 So.2d 1307
(Ala.Crim.App. 1992)."
Burks v. State, supra at 492.
The judgment of the trial court is affirmed.
AFFIRMED.
BOWEN, P.J., and PATTERSON, J., concur.
MONTIEL, J., concurs specially with opinion.
TAYLOR, J., dissents without opinion.