TAYLOR, Presiding Judge.
The appellant, James Edward Stephens, was convicted of the unlawful distribution of controlled substances, a violation of § 13A-12-211, Code of Alabama 1975. He was sentenced to two years in the penitentiary. The appellant received two additional sentences of five years each — one under § 13A-12-250 because the sale occurred within three miles of a school campus, and the other under § 13A-12-270 because the sale occurred within three miles of a public housing project.
I
The appellant contends that the trial court erred in enhancing his sentence under § 13A-12-250 and § 13A-12-270 because the trial court did not make an express finding that the appellant had “sold” drugs as opposed merely to having “delivered” or otherwise “distributed” them. These statutes read as follows:
■ “In addition to any penalties heretofore or hereafter provided by law for any person convicted of an unlawful sale of a controlled substance, there is hereby imposed a penalty of five years incarceration in a state corrections facility with no provision for probation if the situs of such unlawful sale was on the campus or within a three-mile radius of the campus boundaries of any public or private school, college, university or other educational institution in this state.”
§ 13A-12-250. (Emphasis added.)
“In addition to any penalties heretofore or hereafter provided by law for any person convicted of an unlawful sale of a controlled substance, there is hereby imposed a penalty of five years incarceration in a state corrections facility with no provision for probation if the situs of such unlawful sale was within a three-mile radius *75 of a public housing project owned by a housing authority.”
§ 13A-12-270. (Emphasis added.)
The appellant relies on Ex parte Mutrie, 658 So.2d 347 (Ala.1993), in which the Alabama Supreme Court held that the enhancement provisions of § 13A-12-250 and § 13A-12-270 did not apply to convictions for distribution of controlled substances “unless the defendant is found to have sold, or to have collaborated or associated with the seller to sell, a controlled substance.” Mutrie, 658 So.2d at 350. (Emphasis added.) However, this court rejected a similar interpretation of Mutrie in Orr v. State, 665 So.2d 975 (Ala.Cr.App.1994). Neither the jury nor the trial court need make a specific finding that the appellant’s actions constituted a “sale” for purposes of the application of § 13A-5-250 and § 13A-5-270, so long as the evidence supports such a finding. Orr.
Here, the state’s evidence tended to show that on June 4, 1993, the appellant gave Officer Roderick Snider of the Birmingham Police Department crack cocaine in exchange for a marked $20 bill. The appellant and a companion were arrested shortly after the exchange, and the $20 bill was found in the possession of the appellant’s companion. This evidence was sufficient to establish that the defendant sold or “collaborated to sell” a controlled substance. Because the sale occurred within three miles of an elementary school and a public housing project, the trial court did not err in enhancing the appellant’s sentence pursuant to § 13A-12-250 and § 13A-12-270.
II
The appellant also contends that the trial court erred in sentencing him under § 13A-12-250 because, he says, the evidence was conflicting as to whether the drug sale occurred within three miles of an “operating” school. At trial, Officer Snider testified that the appellant sold him drugs within three miles of Inglebrook Elementary School. Snider further testified that Inglebrook Elementary School was an “abandoned” school. At the sentence hearing, Snider clarified his trial testimony and stated that Inglebrook was indeed operational and that the school was merely in summer recess at the time of the drug sale.
In order to enhance the appellant’s sentence under § 13A-12-250, the state must prove by a “preponderance of the evidence” that the drug sale occurred within three miles of a school campus. Germany v. State, 630 So.2d 132 (Ala.Cr.App.1993). The trial court, not the jury, is the finder of fact in determining the applicability of § 13A-12-250. Pettway v. State, 624 So.2d 696 (Ala.Cr. App.1993). “Conflicting evidence is always a question for the finder of fact to determine, and a verdict rendered thereon will not be disturbed on appeal.” Padgett v. State, 668 So.2d 78, 86 (Ala.Cr.App.1995).
Officer Snider’s testimony at the sentence hearing was sufficient to meet the state’s burden of proof despite the fact that that testimony was inconsistent with his testimony at trial. Padgett. Once the state met its burden, it was up to the appellant to offer evidence disputing the state’s evidence. Hester v. State, 608 So.2d 420 (Ala.Cr.App. 1992). Here, the appellant offered no evidence to counter Snider’s assertion that In-glebrook was an operating school. Therefore, the trial court did not err in sentencing the appellant under § 13A-12-250.
The question “is a school a school when the pupils are not there” has already been addressed by this court in Qualls v. State, 555 So.2d 1158, 1164 (Ala.Cr.App.1989) where this court stated:
“The appellant contends on appeal that she should not have been sentenced under § 20-2-79 [now codified in § 13A-5-250] because the sale took place when school was not in session. Although this issue has not been specifically addressed in this state, the federal courts have decided this issue with regard to the federal ‘schoolyard statute’ which provides for enhanced penalties for those convicted of drug distribution within 1000 feet of a school. See 21 U.S.C.A. § 845(a) (West 1989). In United States v. Cunningham, 615 F.Supp. 519 (S.D.N.Y.1985), the defendants argued that the ‘schoolyard statute’ should not apply to them because their conduct involved ‘the sale of narcotics to an adult, two hours *76 after school had finished for the day, in an apartment located on a different street than that which P.S. 113 is located on.’ Cunningham, 615 F.Supp. at 520. The court, in addressing this contention, stated:
“ ‘The defendants’ argument is flawed, however, in that their basic premise rests on an unduly and unjustifiably restrictive and narrow interpretation of both the plain language of Section 845a and Congressional purpose. It is clear from the plain language of Section 845a, and from its legislative history, that it was not designed to punish only sales of narcotics directly to schoolchildren within one thousand feet of a school. Rather, the statute is designed to protect schoolchildren from the direct and indirect dangers posed by the narcotics trade. The statute attempts to do this by creating, in effect, a circular area, with a radius of one thousand feet, around all elementary and secondary schools which will be free of any narcotics traffic, and all of the direct and indirect evils posed by this activity. It is difficult to envision any language more precise and unambiguous than that contained in Section 845a which Congress could have used to accomplish this purpose. Moreover, if Congress merely intended to punish the direct sale of narcotics to schoolchildren, or to prosecute only transactions occurring during school hours, or only transactions which occur on the same street which a school is located on, as the defendants contend, it could have used clear language to that effect in Section 845a.’
“Cunningham, 615 F.Supp. at 520.
“In United States v. Jones, 779 F.2d 121 (2d Cir.1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986), the Second Circuit held that the ‘schoolyard statute’ applied to the defendant even though the sale was made to an adult ‘at night inside a bar and numbers joint at least 2½ blocks away from an elementary school.’ This was despite the fact that the sale did not take place at a ‘hangout’ (i.e. a place frequented by children). See also State v. Ogar, 229 N.J.Super 459, 551 A.2d 1037 (1989) (New Jersey’s ‘schoolyard statute’ intended to create a permanent 24-hour safety zone around schools).
“We also believe that the legislature, by enacting Alabama’s ‘schoolyard statute,’ intended to create an around-the-clock drug-free atmosphere on or near school grounds. It is common knowledge that many official activities, including club meetings, sporting events, dances, etc., take place on school grounds after hours and that students often use a school’s facilities (i.e., tennis courts, basketball courts, playgrounds) for their own recreation. Furthermore, areas near schools frequently become ‘hangouts’ for students. These areas become places where students congregate and socialize at all hours of the day. Therefore, we believe that the legislature clearly intended to protect these areas, as well as the school grounds, from the evils associated with drug activities at all times.”
(Emphasis added.)
Ill
The appellant next contends that the trial court erred when it refused to allow further voir dire examination of those potential jurors who had indicated a bias in favor of police officers.
During voir dire, the appellant asked potential jurors whether they would give more credibility to a police officer’s testimony than to the testimony of other witnesses. Several jurors raised their hands. The court then allowed the appellant to ask additional questions along this line. Afterwards, the court examined each juror individually to clarify the jurors’ responses. After this examination the court refused the appellant’s request to ask further follow-up questions. The record indicates that the question of any potential bias by the jurors was adequately explored. The trial court did not err in denying the appellant’s request to examine the jurors further.
In addition, the appellant contends that the trial court erred by not striking two of the potential venire-members for cause. “The test for determining whether a strike rises to the level of a challenge for cause is *77 “whether a juror can set aside their opinions and try the case fairly and impartially, according to the law and the evidence.’ Marshall v. State, 598 So.2d 14, 16 (Ala.Cr.App. 1991).” Dunning v. State, 659 So.2d 995, 997 (Ala.Cr.App.1994).
Here, each challenged juror gave sufficient indications that he or she would be able to try the case fairly. Juror number 4 told the court that he would evaluate the testimony of a police officer just as he would evaluate the testimony of any other witness. Juror number 6 indicated likewise and further stated that he could set aside any opinion he might have before going into trial. The trial court did not err in refusing to strike these two potential jurors for cause.
rv
The appellant last contends that the trial court erred by allowing into evidence the cocaine that the appellant was accused of selling. Specifically, the appellant asserts that there was a break in the chain of custody because, he says, the state failed to show how the cocaine reached the police department’s evidence locker after it had been analyzed.
The appellant’s allegations concern the chain of custody after the substance was determined to be cocaine. Because the toxicologist testified to the results of his analysis of the cocaine, the state needed to prove the chain of custody only from the appellant to the toxicologist. Congo v. State, 409 So.2d 475 (Ala.Cr.App.1981). This it did. Any tampering with the evidence after it had already been tested and found to be contraband is immaterial. Congo, 409 So.2d at 479. Such tampering, if any, does not affect the toxicologist’s conclusions and thus does not invalidate the chain of custody. Congo. Any possible omission here was harmless.
For the foregoing reasons, the appellant’s conviction and sentences are affirmed.
AFFIRMED.
All the Judges concur.